**Opinion filed May 24, 2012**



In The

# Eleventh Court of Appeals

_____

## No. 11-10-00363-CR
_____

### RUDY VILLA, Appellant

### V.

### STATE OF TEXAS, Appellee

**On Appeal from the 106th District Court**

**Gaines County, Texas**

**Trial Court Cause No. 09-4013**

## O P I N I O N

The grand jury indicted Rudy Villa for the offense of aggravated sexual assault and for the offense of indecency with a child. The jury found appellant not guilty of the offense of indecency with a child, but it found him guilty of the offense of aggravated sexual assault and assessed his punishment at confinement for fifty years. We reverse and remand.

S.D.H. is the alleged victim in this case. Christy Salgado is her mother. Salgado testified that, at the time of the offense involved in this appeal, she and S.D.H. lived in Seminole with her brother, Tony Villa, and his wife, Lori; their two sons, Rudy and David; and Salgado's older

brother, Gerald Villa. Salgado worked at the Pizza Hut restaurant where Lori and David also worked. On October 5, 2009, when she got off work from the night shift at the Pizza Hut, Salgado brought a pizza home for S.D.H. S.D.H. was asleep, but Salgado awakened her. S.D.H. appeared to be pale and sick and did not want to eat, but Salgado convinced her to eat. After S.D.H. had eaten, Salgado took her into the bathroom to get her ready for bed. S.D.H. did not want to go to the bathroom because it burned her "when she went to go pee."

Salgado laid S.D.H. in the floor to see whether there was a rash that might be causing her to burn when urinating. S.D.H. told Salgado that "Rudy" had touched her with his "bad finger," and she demonstrated what he had done. According to Salgado's testimony, S.D.H. said that appellant had penetrated her "wishy-washy" with his bad finger. Although there is some conflict as to whether it was Salgado or her brother, Tony, who was responsible for teaching S.D.H. which finger was the "bad finger," the evidence showed that S.D.H. knew which finger was the "bad finger." When she examined S.D.H., Salgado noticed that S.D.H.'s private area was irritated, "not on the outside, but on the inside." Salgado wrapped S.D.H. in a blanket and took her to the hospital in Seminole. Around 2:00 a.m. on October 6, 2009, a physician examined S.D.H. at the Seminole Hospital, and hospital personnel called the police.

Ken Ketron, a police officer for the City of Seminole, responded to the call and went to Seminole Memorial Hospital. He contacted Lieutenant Patrick Kissick, an investigator for the Seminole Police Department, who also went to the Seminole Memorial Hospital.

After the doctor at the Seminole hospital examined S.D.H., Lieutenant Kissick took Salgado and S.D.H. to a hospital in Odessa to have S.D.H. examined by a sexual assault nurse examiner (S.A.N.E.). Anita Westfall was the sexual assault nurse examiner at the Odessa hospital to which Lieutenant Kissick took S.D.H. S.D.H. told Westfall that "[m]y owie hurts when I pee," and she pointed to her female genitalia area. She also told Westfall that "Rudy put his finger in there and it hurt," and she again pointed to the same area. The examination revealed redness from the inside of the labia minora onto the hymen and urethra. Westfall testified that the redness could be the result of an infection or from digital penetration. There was no redness on the labia majora; the redness was all inside.

Mickey Browne was the chief of police for the City of Seminole. He also went to the Seminole hospital in response to the alleged sexual assault. Chief Browne asked appellant to come to the police station. Appellant and his brother, David, went to meet with Chief Browne. Chief Browne told appellant what S.D.H. said appellant had done to her. Appellant denied that

he had any contact with S.D.H. in any way. He denied that he had ever bathed or dressed S.D.H. Later, when appellant called various family members to testify, they told the jury that all of the family had to help feed, bathe, and otherwise look after S.D.H. because Salgado was not taking care of her as she should.

On October 9, at the request of law enforcement officers, appellant came back to the police station; his father came with him. Chief Browne told appellant that S.D.H. had been examined and that they knew that a "fondling" had taken place. According to Chief Browne, appellant did not respond to that accusation but said that he wanted to talk with his father.

Appellant spoke to his father for ten to fifteen minutes and then gave a statement to Chief Browne. In that statement, appellant said that he babysat S.D.H. while S.D.H.'s mother was at work. He said that he fixed her meals and did other things for her. About two weeks prior to the date of the statement, he was "putting medication on her vagina for the diaper rash." He continued, "While I was putting the salve on her, I put my middle finger in her vagina. I moved my finger back and forth probably twice." He said that he "used [his] middle finger, which [S.D.H.] calls the 'bad finger.'" No one had told him that S.D.H. had said that he used his "bad finger." At some point during appellant's statement, Chief Browne told him that he did not think that appellant was being totally honest and that there "was far more action on his part." Appellant replied, "That's all I've done. That's all I'm going to put in this statement," and he terminated it.

One of appellant's witnesses was Lori, his mother. She testified that, even though S.D.H. was three years old, she always had diaper rashes even before Salgado and S.D.H. moved in. They applied Desitin to S.D.H. almost every day. The rash continued after Salgado and S.D.H. moved in. The family had to do everything for S.D.H. Lori told the jury that the last time appellant changed S.D.H.'s diaper was on September 26, 2009. On that occasion, appellant's father bathed S.D.H., dried her off, and placed her on the bed. He told appellant to put Desitin on S.D.H. while he got some clothes for her. Westfall, the S.A.N.E. nurse, saw no evidence of a diaper rash when she examined S.D.H.

Appellant testified at trial. His lawyer asked him whether he "ever, even accidentally, slip[ped] [his] finger between her vulva and into her vagina." He replied that he was sure that he did not. All he did was apply Desitin. He testified that Chief Browne misunderstood him when he was giving his statement. Appellant said that, what he meant was, "I never put my finger in her. Yes, I put it on her, but I didn't put my finger in her at all. . . . I never did that."

3

Appellant presents us with two issues for review. Each of the issues revolves around the lack of a jury instruction on the medical-care defense. We think that it is important to note that appellant does not argue that the trial court erred when it did not instruct the jury on the medical-care defense. Rather, his first issue on appeal is couched in terms of an evidentiary insufficiency challenge. He argues that a hypothetically correct jury charge would have included an instruction on the medical-care defense, that the overwhelming weight of the evidence showed that he engaged in the conduct in order to administer medical care, and that the evidence was legally insufficient to show otherwise. In his second issue on appeal, appellant claims that he received ineffective assistance from his trial counsel because trial counsel failed to request a jury instruction on the medical-care defense. He argues that trial counsel's failure to request the instruction directly led to his conviction on count one for aggravated sexual assault.

We measure the sufficiency of the evidence against a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). But, it is incumbent upon a defendant to request that the trial court include a defensive issue in the jury charge in order that it be applicable to the case. *Posey v. State*, 966 S.W.2d 57, 62 (Tex. Crim. App. 1998). Absent the request, the defensive issue is not applicable to the case, and the trial court is not required to place the instruction in the jury charge. *Id.* A sufficiency review pertaining to the issue would be inappropriate. *See Hernandez v. State*, 10 S.W.3d 812, 822 (Tex. App.—Beaumont 2000, pet. ref'd). We will review the evidence against a hypothetically correct jury charge, but because appellant did not request it, that charge will not include the medical-care defense.

In a sufficiency review, we examine all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010).

In one of his statements, appellant admitted putting his finger into S.D.H.'s vagina. S.D.H. told several different people that "Rudy" had put his "bad finger" in her. The medical testimony that we have outlined also supports the finding of the jury, as does S.D.H.'s mother's testimony. As the trier of fact on appellant's guilt or innocence, the jury was free to accept or reject the defensive testimony from appellant's family regarding medications for S.D.H.'s diaper rash. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). We hold that any rational

4

trier of fact could have found the essential elements of the offense of aggravated sexual assault beyond a reasonable doubt. Appellant's first issue is overruled.

Would appellant have been entitled to a jury instruction on the medical-care defense provided for in Section 22.021(d) of the Texas Penal Code if he had requested it? Section 22.021(d) provides that the defense stated in Section 22.011(d) of the Texas Penal Code applies to it also. TEX. PENAL CODE ANN. § 22.021(d) (West Supp. 2011). Section 22.011(d) provides: "It is a defense to prosecution . . . that the conduct consisted of medical care for the child and did not include any contact between the anus or sexual organ of the child and the mouth, anus, or sexual organ of the actor or a third party." TEX. PENAL CODE ANN. § 22.011(d) (West 2011).

In a 5-4 decision, the Texas Court of Criminal Appeals has held that "it is the nature of the 'conduct,' not the occupation of the actor, that characterizes the availability of the defense." *Cornet v. State*, 359 S.W.3d 217, 222 (Tex. Crim. App. 2012). Although appellant was not a medical professional, the medical-care defense was nonetheless available to him, if he was otherwise entitled to it.

Although not joined by a majority of the court on the issue, in Parts IIAiii and IIIB of Judge Price's opinion in *Cornet*, he addressed the question of whether the medical-care defense was one of confession and avoidance. He wrote that it was subject to the doctrine of confession and avoidance and that a defendant who attempts to claim entitlement to a medical-care defense instruction must "essentially admit" to each element of the offense, including both the act and the requisite mental state. *Cornet*, 359 S.W.3d at 224–25.

In reaching the conclusion that the doctrine of confession and avoidance applied in the context of the aggravated sexual assault in *Cornet*, Judge Price reviewed, among other cases, *Shaw v. State*, 243 S.W.3d 647 (Tex. Crim. App. 2007). In *Shaw*, the jury convicted the defendant of the offense of recklessly causing bodily injury to a child. The trial court refused to charge the jury on the "Good Samaritan" defense. The defendant claimed that she was entitled to it because of evidence that the defendant's administration of CPR possibly caused the injury. The Court of Criminal Appeals disagreed. The court explained the difference between defenses under Section 2.03 of the Texas Penal Code and those defenses that are subject to the doctrine of confession and avoidance. TEX. PENAL CODE ANN. § 2.03 (West 2011). Under Section 2.03, a defendant is entitled to an instruction on a defense that is raised by "evidence, from any source, on each element of the defense that, if believed by the jury, would support a rational inference that that element [of the defense] is true." *Shaw*, 243 S.W.3d at 657–58. That is true even if the

5

evidence in support of the defense "is weak or contradicted, and even if the trial court is of the opinion that the evidence is not credible." *Id*. at 658.

On the other hand, defenses that are subject to the doctrine of confession and avoidance do not negate any element of the offense; they excuse what would otherwise amount to criminal conduct. *Id*. at 659. If the defensive evidence does nothing beyond negating an element of the offense, a defendant is not entitled to a defensive instruction on defenses subject to the doctrine of confession and avoidance. *Id*. The instruction is appropriate only "when the *defendant's defensive evidence* essentially admits to every element of the offense including the culpable mental state, but interposes the justification to excuse the otherwise criminal conduct." *Id.* (emphasis added). Unlike Section 2.03 defenses that can find support in evidence from any source, matters in confession and avoidance must find support in a defendant's defensive evidence. *Id.* Whether that evidence must come from the defendant personally is a question we need not answer in this case.

In *Cornet*, Judge Price also discussed *Juarez v. State*, 308 S.W.3d 398 (Tex. Crim. App. 2010). In that case, Juarez was charged with aggravated assault on a peace officer with a deadly weapon. 308 S.W.3d at 401. Witnesses saw Juarez and his companions attempting to break into vehicles in the parking lot of an apartment complex and reported it. Officer Burge and other policemen went there to "catch them in the act." In the process, Juarez and the other two men with him ran away. Officer Burge finally caught Juarez and, after a struggle, subdued him. During that time, Juarez bit Officer Burge's finger. Juarez said, "I got his finger in my mouth somehow, and I just bit down to get him off of me, because I felt like I was going to die." *Id*. at 400. Juarez testified at trial, on direct examination, that he did not intend to bite the officer and that he was simply concerned for his life. On cross-examination, Juarez's testimony was that he did not intentionally, knowingly, or recklessly bite the officer's finger; it was an accident. *Id*. at 400. Juarez asked for an instruction on the necessity defense. Because Juarez had denied the culpable mental state when he denied that he bit the officer intentionally, knowingly, or recklessly, the trial court denied the request. The *Juarez* court noted that the doctrine of confession and avoidance requires an admission to the conduct, which includes the act or omission as well as the requisite mental state. *Id*. at 404. Specifically left open by the court was the question of whether the evidence in support of the defense could come from any of the defensive evidence or whether the doctrine of confession and avoidance requires that a defendant personally admit to each element of the offense. *Id*. at 406.

The medical-care defense does not negate any element of the offense with which an accused is charged; the defense excuses conduct that would otherwise be criminal. The specific medical-care defensive issue takes precedence over the more general issues regarding defenses in Section 2.03 of the Texas Penal Code. *See Juarez*, 308 S.W.3d at 405. We hold that, in aggravated sexual assault cases such as this one, the medical-care defense is one of confession and avoidance. Therefore, without holding whether the evidence must originate from the defendant's own statements or otherwise, the defensive evidence must admit to each element of the defense before a defendant is entitled to a jury instruction on the medical-care defense. *See Id.* at 404. Because the evidence we will examine in this case regarding the defendant's admission essentially came from him, we, like the court in *Juarez*, need not decide whether the admission must come from the defendant personally. *Id.* at 406.

The question then becomes: Did appellant essentially admit to all of the elements of the crime with which he was charged and of which the jury convicted him? If he did not essentially admit to each element of the offense, then appellant would not have been entitled to an instruction on the medical-care defense. Furthermore, if appellant was not entitled to an instruction on the medical-care defense, then his counsel would not have been ineffective for failing to ask for it. *Ex parte Nailor*, 149 S.W.3d 125, 133–34 (Tex. Crim. App. 2004); *Lebo v. State*, 100 S.W.3d 417, 422 (Tex. App.—San Antonio 2002, pet. ref'd).

In Count One of the indictment, the grand jury charged that Rudy Villa did "intentionally and knowingly cause the penetration of the female sexual organ of [S.D.H.], a child younger than 14 years of age and not the spouse of the said Rudy Villa, with the finger of the said Rudy Villa." Was there an admission as to each of the elements of that offense?

The first time appellant met with the police, he said that he had never even bathed or dressed S.D.H. He categorically denied that he committed any offense. The next time he went to the police station, he eventually stated that he was applying salve to S.D.H. and that he put his middle finger in S.D.H.'s vagina and moved it back and forth, "maybe twice." That statement was reduced to writing and later admitted into evidence at appellant's trial. At trial, appellant's testimony was that he touched her genitalia when putting the salve on her but that he did not do anything to S.D.H. except apply salve to her: "Yes, I put it on her, but I didn't put my finger in her at all. . . . I never did that."

We are presented with defensive evidence originating with appellant's own statements and testimony that is conflicting. The same situation existed in *Juarez*, a case that we have

discussed extensively earlier in this opinion. There, Juarez denied biting the officer intentionally, knowingly, or recklessly. However, he also admitted that he bit the officer to get him off him because the officer was suffocating him. The court held that Juarez's "mental state—that the biting was done either intentionally, knowingly, or recklessly—could have reasonably been inferred from his testimony about the circumstances surrounding his conduct." Therefore, Juarez had admitted the elements of the offense, including the mental state. *Juarez*, 308 S.W.3d at 405.

We are aware of the cases in which the different legal definitions are set forth as to what, anatomically, penetration of the female sexual organ is and what it is not. The conduct that is criminalized is not limited to a penetration of the vagina but, rather, a penetration of the sexual organ. In those situations in which there has been "tactile contact beneath the fold of complainant's external genitalia," it can be said that penetration of the female sexual organ has occurred. *Vernon v. State*, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992). If the "contact with [the complainant's] anatomy could reasonably be regarded . . . as more intrusive than contact with her outer vaginal lips," then penetration has occurred. *Id.* The "pushing aside and reaching beneath a natural fold of skin into an area of the body not usually exposed to view, even in nakedness, is a significant intrusion beyond mere external contact." *Id.*

If we examine appellant's two statements to Chief Browne as well as his courtroom testimony, can we say that a trier of fact could reasonably infer that each element of the offense has been satisfied? If so, appellant was entitled to an instruction on the medical-care defense. *Juarez*, 308 S.W.3d at 406.

Appellant did not admit to anything in his first statement to law enforcement. Appellant specifically admitted to penetration in his second statement to Chief Browne when he said that he "put his middle finger in her vagina" and moved his "finger back and forth, probably twice." In his trial testimony, he recanted that admission. Nevertheless, whether he recanted his earlier admission or not, the statement was before the jury, and the jury could choose which evidence it would believe. *Sharp*, 707 S.W.2d at 614 (Jury may choose to believe or disbelieve any portion of a witness's testimony). In that written statement, appellant admitted to the offense. Even though appellant testified at trial that he did not put his finger in S.D.H., just on her, the jury could reasonably infer from all of his testimony that, although he denied digital penetration of her vagina, he did penetrate S.D.H.'s sexual organ. Here, the jury, as the factfinder, could reasonably infer that each element of the offense had been satisfied. *Juarez*, 308 S.W.3d at 406.

Appellant would have been entitled to an instruction on the medical-care defense if he had requested it.

In appellant's second issue, he claims that his counsel provided him ineffective assistance when he did not request that the trial court charge the jury on the medical-care defense.

To prevail on a claim of ineffective assistance of counsel, an appellant must establish that his lawyer's performance fell below an objective standard of reasonableness and that there is a "reasonable probability" the result of the proceeding would have been different but for counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 693–94 (1984); *Mallett v. State,* 65 S.W.3d 59, 62–63 (Tex. Crim. App. 2001). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Hernandez v. State*, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986). The purpose of this two-pronged test is to judge whether counsel's conduct so compromised the proper functioning of the adversarial process that the trial cannot be said to have produced a reliable result. *Thompson v. State*, 9 S.W.3d 808, 812–13 (Tex. Crim. App. 1999).

The review of defense counsel's representation is highly deferential and presumes that trial counsel's actions fell within a wide range of reasonable professional assistance. *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). An appellant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Jackson v. State*, 877 S.W.2d 768 (Tex. Crim. App. 1994); *Hayden v. State*, 155 S.W.3d 640, 648 (Tex. App.—Eastland 2005, pet. ref'd). To overcome the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson*, 9 S.W.3d at 814 (quoting *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996)).

Generally, the record on direct appeal will not be sufficient to show that trial counsel's representation was so lacking as to overcome the presumption of reasonable conduct. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). When the record contains no evidence of the reasoning behind trial counsel's actions, we cannot conclude that counsel's performance was deficient. *Jackson*, 877 S.W.2d at 771. However, while the wisdom of trial strategy is not for us to judge, we will inquire into such matters when there appears to be no plausible basis for trial counsel's actions. *Johnson v. State*, 614 S.W.2d 148, 152 (Tex. Crim. App. 1981).

Appellant concedes that there is nothing of record to show what trial counsel's strategy was for not requesting a medical-care instruction. He argues, however, that, because there is no plausible basis for trial counsel's failure to ask for the instruction, trial counsel provided ineffective assistance of counsel as a matter of law. Appellant points to the fact that the jury found him not guilty of the indecency charge and asserts that we can thus infer that the jury believed his medical-care defense. The State argues that we cannot speculate as to why the jury did what it did. We agree. We do not know why the jury returned the verdict that it did on the indecency charge, nor can we speculate as to the reason. It is not our place to second-guess the determination made by the trier of fact. *State v. Gobert*, 275 S.W.3d 888 (Tex. Crim. App. 2009).

However, we have not been able to conceive of any strategically plausible basis for trial counsel's failure to ask for the medical-care defensive instruction. The State suggests that trial counsel might have thought that the medical-care defensive testimony was not going well and decided to abandon that theory. However, the record is clear from beginning to end that appellant's entire case was built around the medical-care defense. Based upon the record in this case, we can envision no plausible reason for trial counsel not to request an instruction directly related to appellant's entire case. We find that failure to fall below an objective standard of reasonableness. *See Vasquez v. State*, 830 S.W.2d 948, 951 (Tex. Crim. App. 1992) (failure to request charge on the defense of necessity is clearly deficient).

Before appellant is entitled to a reversal of this case, however, he must show that there is a reasonable probability that the result of the proceeding would have been different but for counsel's deficient performance. *Strickland*, 466 U.S. at 693–94; *Mallett*, 65 S.W.3d at 62–63. Appellant must show that it was reasonably probable that counsel's performance was such that it undermined confidence in the outcome of the trial. *Hernandez*, 726 S.W.2d at 55.

In *Vasquez*, the jury convicted Vasquez of the offense of possession of a firearm by a felon. *Vasquez*, 830 S.W.2d at 948–49. On appeal to the Court of Criminal Appeals, Vasquez claimed that his counsel was ineffective when he did not request a jury charge on the defense of necessity. The court held that Vasquez's counsel's representation was rendered deficient when he failed to ask for a charge on the defense. *Id*. at 950. The court also reviewed the second prong of *Strickland*: whether there was a reasonable probability that the result of the trial would have been different but for the deficient performance. *Id*. at 949. A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694;

*Vasquez*, 830 S.W.2d at 949. The court decided that Vasquez satisfied the second prong of *Strickland*, and wrote:

> Because the evidence did raise the defensive issue of necessity, and because appellant's counsel failed to request a jury instruction on the issue, the jury was precluded from giving effect to appellant's defense. That in itself undermines our confidence in the conviction sufficiently to convince us that the result of the trial might have been different had the instruction been requested and given.

*Vasquez*, 830 S.W.2d at 951.

Appellant's sole defense in this case revolved around the medical-care defense. As in *Vasquez*, the jury was precluded from giving effect to that defense. Again, as in *Vasquez*, "[t]hat in itself undermines our confidence in the conviction sufficiently" to hold that the result of the trial might have been different had the medical-care instruction been requested and given. Appellant has satisfied the requirements of *Strickland* and its progeny, and his second issue is sustained.

We reverse the judgment of the trial court and remand this case for a new trial.


JIM R. WRIGHT
CHIEF JUSTICE


May 24, 2012

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.

11