

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-13-00147-CR

ROLAND DOUGLAS BOLDEN, JR., Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 354th District Court
Rains County, Texas
Trial Court No. 5173

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

O P I N I O N

Roland Douglas Bolden, Jr., was convicted of aggravated sexual assault of three-year-old A.B.[1] and was sentenced to fifty-five years' confinement. Bolden appeals, claiming (1) that the trial court erred in failing to include the "medical-defense" instruction in its jury charge and (2) that such error was harmful. Because we agree, we reverse the judgment of the trial court and remand to the trial court for a new trial.[2]

## I.    Factual and Procedural History

Bolden, a live-in friend of A.B.'s mother, was left in charge of A.B. on April 8, 2011. It is undisputed that Bolden touched A.B.'s genitalia. Bolden maintains that while she was attempting to use the bathroom on her own, A.B. allegedly defecated and tried to wipe herself; in that process, Bolden alleged that A.B. smeared feces inside her genitalia. Bolden says that when he discovered the feces inside her genitalia, he wiped the inside area clean before diapering the child.

Later that same day, as A.B. rode to the store with a neighbor, Treva Brockway, A.B. made an outcry to Brockway of inappropriate touching of her genitalia by Bolden. When A.B.'s mother confronted Bolden about the allegations, he denied them, stating, "I didn't do it. I did not do it."

---

[1]*See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B) (West Supp. 2013).

[2]Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We are unaware of any conflict between precedent of the Twelfth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

A.B., who was five years old at the time of trial, testified that Bolden stuck his fingernail inside her, that it hurt, and that she cried. A.B. recounted that her diaper was wet, that Bolden changed the diaper, but also touched her "bad spot." She stated that "he went down there, he touched it inside it," explaining that "he touched it with bare hands."

A.B.'s mother testified that she took A.B. to Terrell Renaissance Hospital for a medical examination and treatment the day of the outcry. From there, A.B. was transported by ambulance to Children's Medical Center in Dallas, where she was examined by Dr. Cathleen Lang, a pediatrician and fellow in child abuse and neglect. Lang testified that her examination revealed redness "on the inside of both sides where basically the hymen meets the labia minora comes down." She also detected tenderness in the same area. The redness was described as "on the interior" of the vaginal area. Lang explained, "That's not typically what we would expect from a dirty diaper, especially with the tenderness." However, if stool was on the inside and "someone was wiping her incorrectly, maybe you could get it on the inside . . . ."

Lang read to the jury from State's Exhibit 7 (the social worker's narrative) which stated that the "[p]atient allegedly told the neighbor that Peepaw poked her in her vaginal area with his finger. Mom stated she asked patient if that happened and patient told her that Peepaw put his finger in her vaginal area and went poke, poke, poke. Patient also told Mom that Peepaw's fingernail scratched her."

Bolden testified that he was babysitting A.B. when A.B. indicated that she needed to go to the restroom. Bolden stated that he placed the child on the toilet and told her that he would come get her off when she was finished. On returning to the bathroom, Bolden allegedly

3

discovered that A.B. "had messed on herself and had it all over the bathroom." Bolden claimed A.B. "was playing in her mess and she had her hands all down there and stuff . . . ." Bolden explained,

> I went ahead and picked her up and put her on a towel and I went ahead and went to the -- took her to the couch and cleaned her up and got her situated, you know, I -- I took. . . . I was using a washrag and wipes, and she got it so far up in her that I had to wipe, you know, the best I could. You know what I'm saying, she had it on her coochee.

When asked how he could tell there was feces that far up, Bolden testified, "I pulled it open with my hands and looked up there and seen if it was – if it was clean or not." He explained, "I just opened my hands up, just pulled her like this and looked in there." In further explanation, Bolden stated, "I just open it up a little bit and make sure it's clean in there, yes, sir. That's the way I do it. Then I take the washrag and kind of wipe in there softly to get it out of 'em. How else you gonna do it?"

At the charge conference, defense counsel specifically requested a jury instruction on the medical-care defense to aggravated sexual assault. Counsel was concerned that, unless this defense was submitted, the jury would "find that my client's guilty because they have no choice because of the dictates and the demands of the jury charge." The trial court concluded that changing a diaper does not constitute medical care and, thus, denied the requested instruction.

## II.     Analysis

Section 22.021(a) of the Penal Code provides that a person commits aggravated sexual assault of a child if the person intentionally or knowingly causes the penetration "by any means" of the anus or sexual organ of a child younger than fourteen years of age. TEX. PENAL CODE

4

ANN. § 22.021(a)(1)(B)(i), (a)(2)(B) (West Supp. 2013). Section 22.021(d) provides, "The defense provided by Section 22.011(d) applies to this section." TEX. PENAL CODE ANN. § 22.021(d) (West Supp. 2013). Section 22.011(d) states, "It is a defense to prosecution . . . that the conduct [constituting the offense] consisted of medical care for the child and did not include any contact between the anus or sexual organ of the child and the mouth, anus, or sexual organ of the actor[.]" TEX. PENAL CODE ANN. § 22.011(d) (West 2011).

## A. Availability of the Defense

To assess the availability of the medical-care defense, we must first determine whether (1) Bolden, as a nonmedical professional, is qualified to claim the defense, (2) whether changing the child's soiled diaper constitutes medical care within the meaning of the statute, and (3) whether defensive evidence supports the submission of a jury instruction on medical care.

### 1. The Medical-Care Defense Is Available to Nonmedical Professionals

The Texas Court of Criminal Appeals recently held, in *Cornet v. State*, 359 S.W.3d 217 (Tex. Crim. App. 2012), that the availability of the medical-care defense does not turn on "the accused's familiarity with the science of medicine" and therefore can be claimed by persons who are not medical professionals. *Id*. at 221–22. "The text of the statute makes it abundantly clear that it is the nature of the 'conduct,' not the occupation of the actor, that characterizes the availability of the defense" and that "the defense should apply to all persons, health-care professional or not, who can otherwise validly claim the defense based on their conduct." *Id*. at 222. So, although Bolden is not a health-care professional, the medical-care defense was

5

available to him if he was otherwise entitled to it. *See id*.; *Villa v. State*, 370 S.W.3d 787, 792 (Tex. App.—Eastland 2012), *aff'd*, 417 S.W.3d 455 (Tex. Crim. App. 2013).

### 2. Medical Care

Bolden next claims that changing a soiled diaper constitutes medical care within the meaning of the statute.[3] This assertion is based on the Court of Criminal Appeals' relatively broad reading of the phrase "medical care" in *Cornet*, where a plurality of the court concluded that the medical-care defense "is available when the penetrative conduct consisted of a 'mere' medical inspection." *Cornet*, 359 S.W.3d at 222.

In reaching this conclusion, the court defined the term "medicine" as "'the science and art of dealing with the maintenance of health and the prevention, alleviation, or cure of disease.'" *Id*. at 222–23 (quoting *Webster's Third New International Dictionary* 1402 (2002)). The court defined "care," in accordance with its definition in *Webster's*, to mean "'CHARGE, SUPERVISION, MANAGEMENT: responsibility for or attention to safety and well-being <under a doctor's ~>[.]'" *Id*. at 223 (quoting *Webster's Third New International Dictionary* 338). Given these definitions, the court held that the medical-care defense was available to a stepfather who physically examined his stepdaughter for the purpose of determining whether physical signs of sexual contact or injury were present.[4] The stepfather testified that he "'just wanted to take a look to see if there was any swelling, any scarring, any indication externally that

---

[3]The State does not contest this assertion.

[4]According to Cornet's written statement, the examination included "contact with her labia, which I spread to see if her hymen was still intact because at her age, I did not know if it would have been developed. After examining the child, I noticed that she did not have a hymen, which I did not know if it had been developed or had been broken." *Cornet*, 359 S.W.3d at 219.

she had been injured.'" *Id*. at 224. The court concluded that "[t]his evidence, if believed by the jury, would support a rational inference that the appellant's touching of the child was, in fact, an inspection for a medically relevant purpose." *Id*. "It is evident to us that even the simple inspection of a child's anatomy, if conducted for medical purposes, is consistent with the 'responsibility for or attention to the safety and well-being' of that child." *Id.* at 223.

The Texas Court of Criminal Appeals recently ordered a new trial for a defendant who was convicted of sexually assaulting a child—in which the defendant admitted to digitally penetrating the genital opening of a three-year-old girl to apply ointment to a rash—because defense counsel failed to request a medical-defense instruction. *Villa v. State*, 417 S.W.3d 455, 464 (Tex. Crim. App. 2013); *see also Watrous v. State*, 842 S.W.2d 792, 795 (Tex. App.—El Paso 1992, no pet.) (finding counsel ineffective in failing to request medical-care defense where defendant claimed he was applying vaseline on child's genitals to ease urinary discomfort); *cf*. *Kuhn v. State*, 393 S.W.3d 519, 536–37 (Tex. App.—Austin 2013, pet. ref'd) (jury could not rationally infer from evidence that teaching child to masturbate properly so that she might not hurt herself in future was medical care).

*Cornet* teaches that to determine whether conduct falls within the purview of medical care, the conduct must be "dealing with the maintenance of health and the prevention, alleviation, or cure of disease," consistent with the "'responsibility for or attention to the safety and well-being'" of the child. *Cornet*, 359 S.W.3d at 223 (quoting *Webster's Third New International Dictionary* 338). Given these broad parameters, we believe the evidence at trial raised the issue of whether Bolden's conduct consisted of medical care. Bolden testified that he

7

used washrags and wipes to clean A.B., who (he testified) had feces inside of her sexual organ. To do this, Bolden testified, "I just open it up a little bit and make sure it's clean in there" using a washrag to "wipe in there softly to get it out . . . ." It is apparent that this conduct of changing the soiled diaper (together with the washing and/or cleaning of the fecal material) is related to the maintenance of the child's health (i.e., to prevent rash or possibly infection) and is consistent with attending to the child's safety and well-being.

### (3) Defensive Evidence Supported the Submission of a Jury Instruction on the Medical-Care Defense

The medical-care defense is one of confession and avoidance. *Villa*, 417 S.W.3d at 462; *Cornet*, 359 S.W.3d at 225. "As such, a defendant claiming entitlement to an instruction on the medical-care defense must admit to each element of the offense, including both the act and the requisite mental state." *Villa*, 417 S.W.3d at 462. A confession and avoidance defense interposes a justification to excuse otherwise criminal conduct. *Shaw v. State*, 243 S.W.3d 647, 659 (Tex. Crim. App. 2007). Conversely, if defensive evidence does nothing more than merely negate an element of the offense, the defendant is not entitled to a defensive instruction on the medical-care defense. *Villa*, 417 S.W.3d at 462.[5]

Here, the State claims the trial court properly refused Bolden's request to charge the jury on the medical-care defense because Bolden "never unequivocally admitted" to the offense. In support of this proposition, the State relies on the following excerpt from Bolden's trial testimony: "As far as I know, I didn't do it. Yeah. It's a lie. . . . With God as my witness, I

---

[5]Unlike a confession and avoidance defense, defenses under Section 2.03 of the Penal Code entitle a defendant to an instruction if the defense is raised by "evidence, from any source, on each element of the defense that, if believed by the jury, would support a rational inference that the element [of the defense] is true." *Shaw*, 243 S.W.3d at 657–58; *see* TEX. PENAL CODE ANN. § 2.03 (West 2011).

8

didn't, you know."[6] When asked if he purposely used his fingers to penetrate A.B.'s vagina, Bolden stated that he did not. He continued, "If God is my witness, no, sir." The State contends that because Bolden testified that he used a washrag and wipes instead of his finger and because he specifically denied committing the alleged offense, he was not entitled to the submission of an instruction on the medical-care defense.

There is no question Bolden denied having purposely penetrated A.B.'s vagina with his fingers. This denial does not support the State's assertion, though, that Bolden did not admit to the commission of the offense. Bolden was charged with and convicted of aggravated sexual assault of a child by intentionally or knowingly causing the penetration of A.B.'s sexual organ, pursuant to Section 22.021(a)(1)(B) of the Penal Code. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B) (defining offense as intentionally or knowingly causing penetration of anus or sexual organ of child by any means).

The questions we face are (1) whether Bolden sufficiently admitted to penetration by any means and (2) whether he admitted to such conduct in the context of confession and avoidance. We look to *Cornet* for guidance on these issues. In that case, Cornet "expressly denied ever penetrating K.M.'s sexual organ with his finger or that he invaded her private parts." *Cornet*, 359 S.W.3d at 226. The Court of Criminal Appeals concluded that within the context of aggravated sexual assault, "penetration occurs when there is 'tactile contact beneath the fold of complainant's external genitalia,' and that it is not inaccurate 'to describe [conduct] as a

---

[6]This statement was in response to the question, "So you're telling the Jury, if somebody made this up – not if somebody did. You're telling me it is a lie. Right?" Prior to this question, the State's questions were focused on Bolden's financial support of the household. From the context, it is not clear what Bolden is denying.

penetration, so long as [the] contact with [the complainant's] anatomy could reasonably be regarded by ordinary English speakers as more intrusive than contact with her outer vaginal lips.'" *Id*. (quoting *Vernon v. State*, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992)). "As noted in *Vernon*, vaginal penetration is not the legal standard proscribed by the statute—penetration of the 'sexual organ' is." *Villa*, 417 S.W.3d at 462. "'[T]actile contact beneath the fold of complainant[']s external genitalia amounts to penetration within the meaning of the Aggravated Sexual Assault statute, since vaginal penetration is not required, but only penetration of the 'female sexual organ.'" *Woodall v. State*, 376 S.W.3d 134, 138 (Tex. App.—Texarkana 2012, no pet.) (quoting *Steadman v. State*, 280 S.W.3d 242, 247–48 (Tex. Crim. App. 2009)). "'[P]ushing aside and reaching beneath a natural fold of skin into an area of the body not usually exposed to view, even in nakedness, is a significant intrusion beyond mere external contact'" and, therefore, amounts to penetration under the sexual assault statute. *Cornet*, 359 S.W.3d at 226 (quoting *Vernon*, 841 S.W.2d at 409).

"As for 'admitting' conduct under the doctrine of confession and avoidance, it is sufficient that the defendant point to defensive evidence, originating in his own statements, such that a trier of fact could reasonably infer that each element of the offense has been satisfied." *Cornet*, 359 S.W.3d at 226. For example, Cornet provided a written statement wherein he admitted that "'[his] fingers also made contact with her labia, which [he] spread to see if her hymen was still intact.'" *Id*. at 227. Cornet further testified at trial that he "'spread her cheeks'" in order to ascertain whether she had been sexually abused. *Id*. The court in *Cornet* concluded that when taken together, the foregoing statements were sufficient to establish confession in the

10

context of confession and avoidance. *Id.* That is, in order to view the hymen, Cornet would have had to make contact with the child's genitals "that could 'reasonably be regarded . . . as more intrusive than contact with her outer vaginal lips.'" *Id.* (quoting *Vernon*, 841 S.W.2d at 409).

In *Cornet*, the Court of Criminal Appeals took issue with the State's premise underpinning its position that because Cornet "vehemently denied" penetration at trial, such denial precluded him from satisfying the requirement of confession. Cornet testified that he never "'insert[ed] [his] finger in the vagina of [his] step-daughter.'" The court determined such testimony is "not necessarily a denial of the element of penetration." Instead, "it is more plausibly understood as a denial by the appellant of inserting his finger past the outer and inner labia and into the child's vaginal canal." *Id.* at 227. Because the element of penetration is satisfied by less than this, Cornet's denial was not a denial of the legal element of penetration. *Id.* And, although Cornet testified that he did not touch "any areas that [he] would consider her private parts," and that he did not "ever invade any of those areas," the court found that Cornet was nevertheless entitled to submission of the medical-care defense. *Id.* at 227–28. The court initially noted that the testimony was ambiguous and further concluded that even if the jury believed Cornet denied invading the child's private parts, it could nevertheless find that Cornet committed penetration in the legal sense. *Id.* at 227.

Taking guidance from *Cornet* and related precedent on the legal requirement of penetration for purposes of aggravated sexual assault, we conclude that although Bolden denied inserting his finger in A.B.'s vagina, that testimony does not preclude entitlement to the

11

submission of the medical-care defense.  The element of penetration is satisfied by less than this. *Id.*  Bolden admitted that he "pulled it open" with his hands to see if "it was clean or not."  He further testified, "I just open it up a little bit and make sure it's clean. . . . Then I take the washrag and kind of wipe in there softly to get it out of 'em."  In light of Bolden's testimony that "she had [feces] on her coochee," this description of the contact is sufficient for a reasonable fact-finder to infer that Bolden admitted to penetration as it is described in *Vernon* and its progeny.  That is, the contact described could reasonably be regarded as more intrusive than contact with the outer vaginal lips.  *See Vernon*, 841 S.W.2d at 409.  We, thus, conclude that sufficient evidence existed at trial to show that Bolden essentially admitted, under the doctrine of confession and avoidance, to the element of penetration.  The trial court, therefore, erred in refusing to submit a jury instruction regarding the medical-care defense to the charge of digitally penetrating A.B.'s sexual organ.

## B.      Harm

Having determined that Bolden was entitled to, and did not receive, a defensive instruction on medical care, we must next determine if Bolden was harmed by this omission. Our review of the charge is under the *Almanza* standard when the failure to properly instruct the jury results in error.  *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g).  An erroneous or incomplete jury charge does not result in automatic reversal.  *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994).  Instead, we "must determine whether sufficient harm resulted from the error to require reversal."  *Id*. at 731–32; *Almanza*, 686 S.W.2d at 171.

12

The level of harm an appellant must demonstrate as having resulted from the erroneous jury instruction depends on whether the appellant properly objected to the error. *Abdnor*, 871 S.W.2d at 732. Here, because proper objections were made at trial,[7] Bolden need only demonstrate "some harm" on appeal. *See id.*; *see also Almanza*, 686 S.W.2d at 171. "[A]n error which has been properly preserved by objection will call for reversal as long as the error is not harmless." *Almanza*, 686 S.W.2d at 171. Stated differently, reversal is required if the error is calculated to injure the rights of the defendant. *Cornet v. State*, 417 S.W.3d 446, 449 (Tex. Crim. App. 2013). This means that the record must demonstrate more than a theoretical complaint; it must demonstrate that there is some actual harm. *Id.*; *Sanchez v. State*, 376 S.W.3d 767, 775 (Tex. Crim. App. 2012).

In conducting a harm analysis, we may consider (1) the entire jury charge, (2) the state of the evidence, including the contested issues and weight of probative evidence, (3) the arguments of counsel, and (4) any other relevant information revealed by the record of the trial as a whole. *Almanza*, 686 S.W.2d at 171. In our analysis, neither party has a burden to show harm. *Warner v. State*, 245 S.W.3d 458, 462, 464 (Tex. Crim. App. 2008).

In this case, the jury charge consists of six pages and includes only one count— aggravated sexual assault of a child. The charge instructs, "A person commits the offense of Aggravated Sexual Assault of a Child if the person intentionally or knowingly: (1) causes the

---

[7]Counsel for Bolden specifically asked the trial court to include "the affirmative defense of – at 22.011d which states, 'as a defense to prosecution under Section a2 that the conduct consisted of medical care for the child and did not include any contact between anus or sexual organ of the child and the mouth, anus or the sexual organ of the actor or third party.'"

13

penetration of the anus or sexual organ of a child by any means; . . . ."  The application paragraph instructs,

> [I]f you believe from the evidence beyond a reasonable doubt, that the defendant Roland Douglas Bolden, Jr., on or about the 8th day of April, 2011, in the County of Rains, and the State of Texas, as alleged in the indictment, did then and there intentionally or knowingly cause the penetration of the sexual organ of [A.B.], a child younger than 6 years of age by defendant's finger, then you will find the defendant guilty of the offense of Aggravated Sexual Assault of a Child, as alleged in Cause 5173, and so say by your verdict "Guilty" to Cause 5173.

The charge further instructed, "If you do not so believe, or if you have a reasonable doubt thereof, you will acquit the defendant of the offense of Aggravated Sexual Assault of a Child . . . ."

The charge authorized acquittal only if the jury did not believe or had a reasonable doubt as to Bolden's intentional or knowing penetration of A.B.'s sexual organ.[8]  Bolden complains that without the medical-care defense, the jury was required to convict even if they believed that his actions amounted to medical care.  As long as penetration was done so intentionally or knowingly, Bolden complains, the jury had no choice but to convict.  As recognized by the Texas Court of Criminal Appeals,

> The absence of this type of instruction is generally harmful because its omission leaves the jury without a vehicle by which to acquit a defendant who has admitted to all the elements of the offense.  *See, e.g.*, *Vasquez v. State*, 830 S.W.2d 948, 951 (Tex. Crim. App. 1992) (omission of instruction on defense of necessity harmful); *Miller v. State*, 815 S.W.2d 582, 586 (Tex. Crim. App. 1991) (omission of instruction on mistake-of-fact defense harmful); *Hill v. State*, 765 S.W.2d 794, 797–98 (Tex. Crim. App. 1989) (omission of instruction on mistake-of-fact defense harmful); *Johnson v. State*, 271 S.W.3d 359, 368–69 (Tex. App.—

---

[8]Here, the charge correctly omitted a finding that penetration was done for a sexual purpose or to arouse sexual desire.  Unlike other offenses listed in the Penal Code, the offense of aggravated sexual assault does not require proof of the sexual nature of the conduct.  TEX. PENAL CODE ANN. § 22.021 (West Supp. 2013).

14

> Beaumont 2008, pet. ref'd) (omission of self-defense instruction harmful). Our survey of case law, in fact, has revealed no cases that have found the omission of a defensive instruction under a confession and avoidance theory to be harmless. In general, when there is a single offense tried before a jury, it is impossible to determine how a jury would have weighed the credibility of the evidence on a defensive issue, and, therefore, appellate courts have reversed convictions in order to permit the jury to decide whether it believes the defensive evidence.

*Cornet*, 417 S.W.3d at 451. Because this case involves a single offense tried before a jury, the omission of the defense of medical care weighs in favor of finding Bolden suffered some harm. We cannot know how the jury would have weighed the credibility of the evidence on this issue.

The second *Almanza* factor is "the state of the evidence, including the contested issues and weight of probative evidence." *Almanza*, 686 S.W.2d at 171. The State's witnesses testified to facts that, if believed, supported Bolden's conviction. Importantly, though, Bolden testified to facts that, if believed, would have entitled him to an acquittal under the medical-care defense. Thus, the omission of the medical-care defense instruction not only touched on a vital aspect of Bolden's defense; the omission gutted the entirety of Bolden's defense.

The third *Almanza* factor is "the argument of counsel." *Id*. As previously discussed, Bolden was charged with the offense of aggravated sexual assault of a child. In his opening statement at trial, Bolden's attorney told the jury, "[w]hat you're going to hear is that my client cleaned the child up but there's not going to be any evidence that he did it to gratify any sexual desire or to arouse himself or gratify anyone's sexual desire."[9]

Counsel explained, "[T]his is one of those cases where there's going to be evidence but it's not going to say my client did it," referring to the allegation as a "witch hunt." In closing,

---

[9]This comment is gratuitous, as the mental state mentioned by defense counsel is not an element in the offense of aggravated sexual assault. *See* TEX. PENAL CODE ANN. § 22.021.

15

defense counsel attacked the credibility of the testimony offered by the State's witnesses. He further stated,

> It makes sense that she made a mess in the bathroom and the person that she considered a grandfather goes in there to clean her up.
>
> . . . if you've ever changed a dirty diaper with a girl, it's different. It can get in the feces – feces can get in the child's folds of the vagina and has to be cleaned out. In this situation what he did was reasonable under the circumstances. He picked her up in a towel, he got her cleaned up, he put the diaper on her, he put on the camouflage shorts that came off the dryer. . . .
>
> . . . .
>
> . . . . You heard Mr. Bolden say that, when he was cleaning her up, he was using wipes and a washcloth, and it may have been the wipe or the washcloth that penetrated her vagina and made that redness.

Further,

> Sometimes when there's feces, it gets stuck in bad places. You have to rub two or three times. Those of you who have changed dirty diapers, you'd know it doesn't always just wipe right off. Even with a washrag or a wet wipe, sometimes you have to wipe and wipe and wipe to make it come off.

Defense counsel asked,

> Where would we be today if . . . every daycare provider, every babysitter, every father, grandfather or mother was put to this test? If we're going to say today that cleaning a child from a dirty diaper is sexual assault of a child, where do we go? Who are we going to prosecute?

The State told the jury that Bolden "admitted every element of the offense, every single element, he admitted, that's in there." "He said he had to pull her apart to see if she was clean." The State further argued that "if one person's testimony alone proves to you each and every element of the offense, then you'll find him guilty."

Defense counsel vaguely alluded to the medical-care defense in opening but focused on it several times in closing argument (even though the instruction was not given). The State told the jury several times that this was not a diaper change, but instead was a sexual assault. The State also told the jury that Bolden admitted to all of the elements of the offense of aggravated sexual assault. This *Almanza* factor weighs in favor of Bolden.

The final *Almanza* factor is "any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171. As previously discussed, Bolden was only charged with one offense. This factor distinguishes the present case from *Cornet*, where the Court of Criminal Appeals ultimately concluded that the omission of the medical-care defense in that case was harmless. *Cornet*, 417 S.W.3d at 455.

Cornet was convicted of two out of three charged counts of aggravated sexual assault of a child by digitally penetrating the complainant's genitals (as charged in count one) and by making oral contact with the complainant's anus (as charged in count three). *Id.* at 451. Even though the error only affected the first count (digital penetration of complainant's genitals) both the complainant and Cornet described a single event in their testimony. According to the complainant, Cornet sexually touched her and had her sit on his face as he made oral contact with her anus. *Id.* at 452. According to Cornet, he touched his stepdaughter for the purpose of examining her to determine if she had been sexually assaulted. *Id.* While generally in a single offense trial, it is not known how a jury would weigh the credibility of the evidence on a defensive issue, the *Cornet* court was able to make such a determination because more than a single offense was involved:

By its terms, the medical-care defense does not apply to any alleged conduct involving anus-to-mouth contact. It is inconceivable that the jury would have found appellant guilty of causing the anus of the complainant to contact his mouth, a claim entirely denied by appellant, had it believed his claim that he was providing medical care to the complainant during the same event. It is clear that the jury believed the complainant and disbelieved appellant's claims that he was only touching the complainant with his hand to provide medical care.

*Id.* at 452 (citations omitted).

*Cornet* then distinguished *Villa*, where that court "similarly considered the implications that reasonably could be drawn from a jury's verdicts on two different offenses tried simultaneously." *Id.*; *see Villa*, 417 S.W.3d at 462. In that case, Villa was found not guilty of indecency with a child but was found guilty of aggravated sexual assault of the same child. *Id.* at 464. The court reasoned,

The jury's not-guilty verdict for the indecency-with-a-child charge indicates that the jury found no intent by Appellant to arouse or gratify his sexual desires. . . . Thus, it appears that the jury's guilty verdict on the aggravated-sexual-assault charge was based solely on the very specific act of penetration of the sexual organ. The statements by [complainant] and Appellant related to this specific act are not inconsistent . . . . Given the fact that the jury specifically found no sexual intent to Appellant's actions, it is likely that the verdict on the aggravated-sexual-assault charge would have been different had the jury been provided with a vehicle to give effect to Appellant's medical-care defense.

*Villa*, 417 S.W.3d at 464. So, the court found it "likely" that the verdict would have been different in this ineffective assistance of counsel case.

Here, we do not have jury verdicts on different offenses from which implications can be drawn, as was true in *Cornet* and *Villa*. This case is more analogous to *Watrous* (finding ineffective assistance of counsel). Watrous was convicted of aggravated sexual assault of a

18

child.[10] *Id*. at 793. As in this case, the defendant denied touching the complainant in a sexual manner. Instead, Watrous claimed that he was merely attempting to apply vaseline to the child's genitals for complaints of painful urination. *Id.* at 794. As in this case, counsel's closing argument in *Watrous* focused on "establishing that Appellant's act was for a lawful purpose." *Id*. at 795. Yet, because a medical-care defense instruction was not requested, the jurors could not properly consider defense counsel's closing argument. "As a result, Appellant's defense was rendered meaningless, and the presentation of all the evidence establishing medical care had no legal effect." *Id*. Unlike *Cornet*, the record in *Watrous* "was inadequate from which to discern how the jury would have assessed a medical-care defense had such an instruction been given." *Cornet*, 417 S.W.3d at 453.

Conversely, the record-specific analysis in *Cornet* revealed that the jury rejected Cornet's statements invoking the medical-care defense. *Id.* at 448. This conclusion was based on jury verdicts on different offenses, the implications of which revealed the jury's rejection of that defense.

> Had appellant been tried solely for the digital penetration count or only for offenses to which the medical-care-defense instruction applied, we likely would have no information from which to determine whether the jury would have found appellant's medical-care-defense evidence credible.

---

[10]Watrous was also indicted on one count of indecency with a child pursuant to Section 21.11(a)(1) of the Texas Penal Code. This section provides that it is an offense to engage in sexual contact with a child (younger than seventeen years of age) or to cause the child to engage in sexual contact. The intent to arouse or gratify sexual desire is not an element of this offense. TEX. PENAL CODE ANN. § 21.11(a)(1). According to the Texas Court of Criminal Appeals, *Watrous* is distinguished from *Cornet* because "the omitted medical-care defense would have applied to both counts, unlike the situation in this case." *Cornet*, 417 S.W.3d at 453.

*Id*. at 455. Here, Bolden was charged with and convicted of only one count. The medical-care defense applied to that single count. Any assessment we might make regarding how the jury would have treated the medical-care defense, had such instruction been given, would be speculative, at best.

The trial court is required to instruct the jury on statutory defenses, affirmative defenses, and justifications when they are raised by the evidence. *Walters v. State*, 247 S.W.3d 204, 208–09 (Tex. Crim. App. 2007). This is true regardless of whether the evidence is "strong, feeble, unimpeached, or contradicted, and even when the trial court thinks that the testimony is not worthy of belief." *Id*. at 209. "This rule is designed to insure that the jury, not the judge, will decide the relative credibility of the evidence." *Miller v. State*, 815 S.W.2d 582, 585 (Tex. Crim. App. 1991) (en banc); *see also Woodfox v. State*, 742 S.W.2d 408, 410 (Tex. Crim. App. 1987) ("When a judge refuses to give an instruction on a defensive issue because the evidence supporting it is weak or unbelievable, he effectively substitutes his judgment on the weight of the evidence for that of the jury.").

Bolden was entitled to have his defensive instruction on the medical-care defense considered by the trier of fact. Because the jury charge did not include such an instruction, the jury could not interpret the evidence in such a way to support a finding of the medical-care defense if they believed Bolden's justification defense. We, therefore, conclude that Bolden suffered some harm from the trial court's refusal to submit to the jury his request for an instruction on the medical-care defense.

**III.      Conclusion**

Having sustained Bolden's sole issue, we reverse the judgment of the trial court and remand to the trial court for a new trial.


Bailey C. Moseley
Justice

Date Submitted:      February 20, 2014
Date Decided:        April 11, 2014

Publish