ACCEPTED
14-15-00080-CR
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
10/1/2015 11:43:48 AM
CHRISTOPHER PRINE
CLERK

# No. 14-15-00080-CR

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS

10/1/2015 11:43:48 AM
CHRISTOPHER A. PRINE
Clerk

## IN THE FOURTEENTH COURT OF APPEALS
## HOUSTON, TEXAS

**JOSHA RENEE PRIOR,**

*Appellant*,

**Vs.**

**THE STATE OF TEXAS,**

*Appellee*.

**Appeal from the 412th District Court**
**Brazoria County, Texas**
**Trial Court Cause No. 73278**

## BRIEF FOR THE APPELLEE, THE STATE OF TEXAS

JERI YENNE – BRAZORIA COUNTY
CRIMINAL DISTRICT ATTORNEY

Cynthia D. Ericson
State Bar No. 24053188
Assistant Criminal District Attorney
111 East Locust St., Suite 408A
Angleton, Texas 77515
(979) 864-1233
(979) 864-1712 Fax
cynthiae@brazoria-county.com

Attorney for the Appellee,
**Oral argument is requested.**     The State of Texas

# IDENTITY OF PARTIES AND COUNSEL

**Appellant:**      Josha Renee Prior

**Appellee:**      The State of Texas

**Attorney for the Appellant:**  Perry R. Stevens
           State Bar No. 00797496
           603 East Mulberry Street
           Angleton, Texas 77515
           (979) 848-1111
           (979) 849-9398 Fax
           pstevenslawoffice@sbcglobal.net

**Attorney for the Appellant**
**at Trial:**       Justin T. Surginer
           State Bar No. 24063329
           8831 Long Point Road, Suite 401
           Houston, Texas 77055
           (713) 408-6421
           (281) 715-2838 Fax

**Attorneys for the Appellee**
**on Appeal:**      Cynthia D. Ericson
           State Bar No. 24053188
           Assistant Criminal District Attorney
           111 East Locust St., Suite 408A
           Angleton, Texas 77515
           (979) 864-1233
           (979) 864-1712 Fax
           cynthiae@brazoria-county.com

**Attorneys for the Appellee**
**at Trial:**       Kurt Sistrunk
           State Bar No.18444950
           Assistant Criminal District Attorney
           Robyn Griffith
           State Bar No. 24012738
           Assistant Criminal District Attorney
           111 East Locust St., Suite 408A
           Angleton, Texas 77515
           (979) 864-1233
           (979) 864-1712 Fax

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ................................................... ii

TABLE OF CONTENTS ......................................................................... iii

INDEX OF AUTHORITIES ......................................................................v

ABBREVIATIONS FOR RECORD REFERENCES ...................................x

STATEMENT OF THE CASE ...................................................................1

ISSUES PRESENTED ..............................................................................2

STATEMENT OF FACTS ........................................................................3

SUMMARY OF THE ARGUMENT ...........................................................9

ARGUMENT ....................................................................................... 10

1)      *Strickland* Standard of Review ............................................. 11

2)      Presumption of Reasonably Professional Assistance ........................ 12

3)      Trial Strategy ................................................................... 15

4)      Theory of Defense: Attack on Credibility ......................................... 17

5)      Theory of Defense: Not a Deadly Weapon ........................................ 20

6)      Risks of Self-Defense Instruction........................................... 24

7)      No Prejudice .................................................................... 31

CONCLUSION.................................................................................. 35

PRAYER.......................................................................................... 36

CERTIFICATE OF SERVICE ...................................................................... 37

CERTIFICATE OF RULE 9.4 COMPLIANCE ........................................... 38

APPENDIX .................................................................................................... 39

# INDEX OF AUTHORITIES

**Cases**

*Adame v. State*,
  69 S.W.3d 581 (Tex.Crim.App.2002)............................... 21, 22

*Benoit v. State*,
  561 S.W.2d 810 (Tex.Crim.App.1977), abrogated by
  *Harrison v. State,* 187 S.W.3d 429 (Tex.Crim.App.2005)...... 31

*Blaine v. State*,
  647 S.W.2d 293 (Tex.Crim.App.1983).................................... 22

*Bone v. State*,
  77 S.W.3d 828 (Tex.Crim.App.2002)........................... 14, 16, 32

*Butler v. State*,
  716 S.W.2d 48 (Tex.Crim.App.1986)..................................... 13

*Cannon v. State*,
  252 S.W.3d 342 (Tex.Crim.App.2008).................................... 33

*Chapa v. State*,
  407 S.W.3d 428 (Tex.App.—Houston [14th Dist.]
  2013, no pet.)......................................................................... 14

*Cornet v. State*,
  417 S.W.3d 446 (Tex.Crim.App.2013).............................. 25, 26

*Delrio v. State*,
  840 S.W.2d 443 (Tex.Crim.App.1992) (en banc)
  (per curium)........................................................................... 13

*Dugar v. State*,
  464 S.W.3d 811 (Tex.App.—Houston [14th Dist.]
  2015, pet. ref'd)..................................................................... 26

*Ex parte Chandler*,
  182 S.W.3d 350 (Tex.Crim.App.2005).................................. 31

*Ex parte Lane*,
　　303 S.W.3d 702 (Tex.Crim.App.2009)................................... 32

*Ex parte Nailor*,
　　149 S.W.3d 125 (Tex.Crim.App.2004)....................... 24, 25, 30

*Fregia v. State*,
　　No. 01-13-00312-CR, 2014 WL 527535
　　(Tex.App.—Houston [14th Dist.], Feb. 6, 2014, pet. ref'd)
　　(mem.opinion) (not designated for publication) ...................... 24

*Goodspeed v. State*,
　　187 S.W.3d 390 (Tex.Crim.App.2005)............................. 14, 30

*Guerrero v. State*,
　　No. 14-13-00880-CR, 2014 WL 3955157
　　(Tex.App.—Houston [14th Dist.], Aug.14, 2014, pet. ref'd)
　　(mem. opinion) (not designated for publication) ..................... 15

*Hernandez v. State*,
　　726 S.W.2d 53 (Tex.Crim.App.1986)............................... 11, 12

*Hobbs v. State*,
　　298 S.W.3d 193 (Tex.Crim.App.2009).................................... 14

*Jackson v. State*,
　　877 S.W.2d 768 (Tex.Crim.App.1994) (en banc)................... 13

*Jones v. State*,
　　No. 14-10-00767-CR, 2011 WL 3332156
　　(Tex.App.—Houston [14th Dist.], Aug. 4, 2011, pet. ref'd)
　　(mem.opinion) (not designated for publication) ...................... 21

*Juarez v. State*,
　　308 S.W.3d 398 (Crim.App.Tex.2010).................................... 24

*Lopez v. State,*
　　343 S.W.3d 137 (Tex.Cr.App.2011)..................... 12, 13, 14, 32

*Mitchell v. State*,
      68 S.W.3d 640 (Tex.Crim.App.2002)...................................... 32

*Mosley v. State*,
      545 S.W.2d 144 (Tex.Crim.App.1976)................................. 22

*Musquiz v. State*,
      No. 14-13-01008-CR, 2015 WL 457737
      (Tex.App.—Houston [14th Dist.], Feb. 3, 2015, no pet.)
      (mem. opinion) (not designated for publication) ..................... 34

*Okonkwo v. State*,
      398 S.W.3d 689 (Tex.Crim.App.2013).................. 12, 23, 30, 33

*Posey v. State*,
      966 S.W.2d 57 (Tex.Crim.App.1998)................................ 16, 31

*Pouncy v. State*,
      No. 14-12-00470-CR, 2013 WL 3580638
      (Tex.App.—Houston [14th Dist.], July 11, 2013, pet. ref'd)
      (mem.opinion) (not designated for publication) ...................... 15

*Robertson v. State*,
      187 S.W.3d 475 (Tex.Crim.App.2006)................................... 12

*Salinas v. State*,
      163 S.W.3d 734 (Tex.Crim.App.2005)................................... 12

*Saxton v. State*,
      804 S.W.2d 910 (Tex.Crim.App.1991)................................... 16

*Smith v. State*,
      286 S.W.3d 333 (Tex.Crim.App.2009)................................... 14

*Solis v. State*,
      792 S.W.2d 95 (Tex.Crim.App.1990) (en banc).......... 13, 32, 33

*Storr v. State*,
      126 S.W.3d 647 (Tex.App.—Houston [14th Dist.]
      2004, pet. ref'd)................................................................. 13

*Strickland v. Washington*,
   466 U.S. 668, 104 S.Ct. 2052,
   80 L.Ed.2d 674 (1984) ........................................... 11, 12, 13, 32

*Thomas v. State*,
   678 S.W.2d 82 (Tex.Crim.App.1984) (en banc)...................... 24

*Thompson v. State*,
   9 S.W. 3d 808 (Tex.Crim.App.1999)................................ 13, 14

*Tolbert v. State*,
   306 S.W.3d 776 (Tex.Crim.App.2010)................................... 16

*Vasquez v State*,
   830 S.W.2d 948 (Tex.Crim.App.1992)
   (en banc) (per curium).............................................. 13

*Villa v. State*,
   370 S.W.3d 787, 796-97 (Tex.App.—Eastland 2012,
   aff'd, 417 S.W.3d 455 (Tex.Crim.App.2013)......................... 13

*Weatherall v. State*,
   No. 06-09-00095-CR, 2009 WL 3349039
   (Tex.App.—Texarkana, Oct. 20, 2009, no pet.)
   (mem.opinion) (not designated for publication) ..................... 27

*Williams v. State*,
   No. 14-95-01098-CR, 1998 WL 78595
   (Tex.App.—Houston [14th Dist.], Feb.26, 1998, no pet.)
   (not designated for publication) ............................... 16

**Statutes**

Tex. Penal Code Ann. § 1.07(a) (Vernon 2011) ......................................... 21

Tex. Penal Code Ann. § 9.31 (Vernon 2011) ................................. 27, 28, 29

Tex. Penal Code Ann. § 46.02 (Vernon 2011) ............................................ 27

**Treatises**

8 Tex. Prac., Criminal Forms and Trial Manual § 106.16 (11th ed.) ............ 29

## ABBREVIATIONS FOR RECORD REFERENCES

| | Abbreviation | The Record |
|---|---|---|
| 1 | RR 2:532 | Reporter's Record, vol. 2, page 532. |
| 2 | CR 1:45 | Clerk's Record, vol. 1, page 45. |
| 3 | Ant. Br. 5 | Appellant's brief, page 5. |
| 4 | Apx. Ex. 1 | State's appendix, Exhibit 1. |
| 5 | RR 5: Sx. 1 | Reporter's Record, vol. 5, State's Exhibit 1 |

## STATEMENT OF THE CASE

A jury convicted Appellant, Josha Renee Prior, of Aggravated Assault with an affirmative finding of a deadly weapon, sentenced her to five years confinement, and assessed a fine of $10,000 (CR 1:60-61). Trial occurred in the 412th Judicial District Court for Brazoria County, Texas, the Honorable Jeremy E. Warren presiding on behalf of the Honorable W. Edwin Denman.

## ISSUES PRESENTED

At issue is whether Appellant was denied effective assistance of counsel when her trial attorney declined to include a self-defense instruction in the jury charge after consulting with her at the conclusion of the guilt-innocence phase of trial.

## STATEMENT OF FACTS

Shortly after 3 p.m. on March 14, 2014, Bruce Bratcher rode in his Ford F-350 pickup truck to a convenience store in Pearland, Texas. (RR 3:33, 3:34, 3:59, 3:117, 3:119; RR 6: Sx.3). As his wife, Vickie, drove the truck into the parking lot, they noticed the Appellant because the waistband of her pants sat below her buttocks, exposing her red underwear. (RR 3:69-3:70, 3:143-144, 3:146).

Mr. and Mrs. Bratcher noticed Appellant bending over her SUV because of her exposed red underwear. (RR 3:69-70, 3:128). Appellant also wore a baseball cap turned to the side. (RR 3:71, 3:146). The Bratchers and Appellant were strangers to each other on the date of the offense. (RR 3:189). Bruce thought that Appellant was "another man," and he later described her to a Pearland Police Department detective as a small male in his late teens or early twenties who had braided hair and saggy clothing.[1] (RR 3:24, 3:146; RR 6: Sx. 9).

Vickie remained in the truck with the engine running while Bruce exited the passenger seat and walked toward the front the convenience

---

[1] Detective Jeffrey Jernigan identified Appellant as the daughter of the registered owner of the Mercedes SUV Appellant was driving at the time of the offense by using the license plate number taken down by Vickie Bratcher. (RR 3:25-28). He presented Bruce Bratcher with a photo line-up, and Bruce confirmed that Appellant was the person whom he initially believed to be a small male. (RR 3:141).

3

store. (RR 3:67-68). Appellant had parked her SUV near that location, and was moving back and forth from her vehicle to a trash can. (RR 3:35-36, RR 3:186). While this was happening, her younger brother was inside the store. (RR 3:192-94).

Bruce testified that he noticed her underwear before he exited his truck and said she appeared to react to him because of the way he was looking at her. (RR 3:122-24). At the time Bruce and Appellant first spoke to each other, they were ten to fifteen feet apart—or about the length of a car. (RR 3:81, 3:122, 3:143).[2] Bruce said he heard Appellant say something, and he asked her, "Pardon me?" (RR 3:120). Appellant asked him "what the F__" he was looking at. (RR 3:120-21, 3:169, 3:173). Bruce turned to face Appellant, and said he was looking at her "mother-F__ing A__." (RR 3:121, 3:149). According to Bruce and his wife, he neither approached nor followed Appellant, and remained in the same place at the front of the store during the entire encounter. (RR 3:80-81, 3:115, 3:126, 3:169-70, 3:255). Appellant then told Bruce that she had something for his "F__ing A__," indicating with her finger for Bruce to wait for her. (RR 3:123, 3:175).

Appellant's version of the initial events leading up to the confrontation, however, differed from Bruce's testimony. Appellant said

---

[2] Vickie and Bruce Bratcher are in their fifties. (RR 3:58). Appellant is 5' 7" and weighs 126 pounds. (RR 3:189). Bruce is six foot tall and weighs 240 pounds. (RR 3:153).

4

she used no foul language, but Bruce was loud and aggressive. (RR 3:188-89). Appellant said Bruce was "looking at [her] funny," and she asked herself under her breath, "Why is he looking at me?" as she walked to the trash can. (RR 3:187, 3:188). Appellant said that instead of begging her pardon Bruce asked her, "What—what did you say?" (RR 3:188-89). Appellant said that he followed this question with, "What—what's up? I'm a real N____; I'm a real N___." (RR 3:190). Appellant responded with "So what?" (RR 3:190). She later told the detective that Bruce said that because he was jealous of her. (RR 3:257).

Appellant claimed that Bruce then began walking aggressively towards her, and she returned to her SUV. When Appellant reached her vehicle she noticed a BB gun inside. (RR 3:153, 3:190-92, 3:232-33). Appellant told the jury she believed that a friend must have left it there after they had recently played with it in the park. (RR 3:190-92, 3:215, 3:232-33). At that moment, feeling that her life was threatened—and thinking that the BB gun looked like a real firearm—Appellant said she stuck the BB gun in her pants and turned to face Bruce. (RR 3:192). Appellant said he was within arm's reach when she got the BB gun from her SUV. (RR 3:201). She also said that Bruce backed away from her once she put the BB gun in her pants (RR 3:54, 229), and that she said nothing after she retrieved the

5

gun.[3]  (RR 3:194-96).  Appellant also denied pointing or waving the pistol, explaining that she never raised it for fear that Bruce would see that it was only a BB gun.  (RR 3:195, 3: 229).

Appellant testified Bruce asked her, "What you gonna do, shoot me? I'm a cop?"  Bruce then ran to his vehicle saying, "Baby, they pulled a gun out on me."  (RR 3:193). Appellant said as she then tried to enter the convenience store to get her brother, Bruce came back to her and blocked her path.  (RR 3:193).  As Appellant's brother then exited the convenience store, Bruce turned to face him, nose-to-nose.  (RR 3:193-94, 3:217).

In contrast, Bruce testified that Appellant went to her SUV and pulled a pistol from inside the open driver's side door.  (RR 3:124, 3:127). Bruce said Appellant slid the top of the pistol back to cock it, and pointed it at him.[4] Appellant then waved her arms in a circular motion and said "This is what I have for you, mother-F___er, uh-huh."  (RR 3:133, 3:157).  Bruce asked Appellant if she was going to shoot him. (RR 3:178). At that moment, he sensed Appellant's brother approach him from the rear saying "yeah, uh-

---

[3]  Detective Jernigan testified that during her statement to him in his investigation "she advised initially that she said nothing, but eventually stated that she said, 'Now, what's up?'" (RR 3:258).

[4]  During direct examination, Appellant denied pointing the gun at Bruce.  In response to a question about whether she pointed the gun, she responded, "Not at all because I felt like if I did that, he would notice it would be a BB gun."  (RR 3:195).  She continued, "No, I did not point it," and she denied waiving it around.  But during cross-examination, Appellant admitted pointing it at him.  "I pointed a gun at him ..." (RR 3:224).

huh." (RR 3:134-35). Bruce turned to Appellant's brother while trying to reduce his profile in the event Appellant fired the pistol. (RR 3:134-37, 3:160). Bruce then spoke roughly to Appellant's brother.[5] (RR 3:134-37, 60). He said that Appellant put the gun in her waistband and continued to speak to him. At that moment, Bruce motioned for his wife to drive towards them. (RR 3:137-39).

Vickie Bratcher viewed the encounter from inside the couple's truck; however, she could not hear the initial exchange. (RR 3:77-79). Vickie testified she saw her husband stop, turn his face and body towards Appellant, and speak to Appellant. (RR 3:77-79). Vickie then saw Appellant go to her car and return to speak to Bruce again (RR 3:82), but she did not see the gun. (RR 3:102-105). Vickie then saw Appellant's brother exit the store door and approach her husband so that Appellant was in front of Bruce while Appellant's brother was behind him. (RR 3:83-84, 3:91).

Vickie saw Bruce raise his hand and heard him yell for her to block the two young people in the parking lot. He also told her to call the

---

[5] In fact, Bruce testified that he wanted to frighten Appellant's brother because Bruce did not know whether he was also armed. Bruce told Appellant's brother, "Look mother-F___, I will suck your mother-F___ing eyeball out . . . ." (RR 3:134-37, 3:162). Bruce also hoped to use Appellant's brother as a shield in the event Appellant tried to shoot him. (RR 3:136, 3:177).

7

police because one of them pulled a gun on him.[6]  (RR 3:86).  As Vickie began to drive the Ford F-350 slowly toward Appellant's SUV, Appellant and her brother got into the SUV and maneuvered it abruptly out of the convenience store parking lot and fled the scene. (RR 3:96, 3:98, 3:139). Officers with the Pearland Police Department arrived approximately ten minutes later.  (RR 3:98).

Although Appellant said the pistol was only a BB gun, (RR 3:55, 3:190-92, 3:232-33), Bruce described it as a semi-automatic pistol like the Sig-Sauer P228 that his wife owns.  (RR 3:58, 3:129, 3:131-32; RR 6:Sx. 7, 6:Sx. 8).  Bruce said he saw Appellant cock the pistol, and that he saw the barrel of the firearm.  (RR 3:130, 3:133, 3:170, 2:175).  The actual gun Appellant used during the encounter was neither recovered during the investigation; nor was it produced by any witness during trial, including the Appellant.

---

[6] Explaining his thought process, Bratcher testified that he wanted his wife to "run into them and put that Mercedes in the store" because "if she hit that car hard enough with them in there" then "it would give me the upper hand ..."  (RR 3:138-39, 3:163; RR 6:Sx. 1, 6:Sx. 2, 6:Sx. 5).

## SUMMARY OF THE ARGUMENT

Appellant cannot establish defense counsel was ineffective for failing to request a self-defense instruction in the jury charge, especially since the record shows Appellant agreed with her attorney's decision to have the instruction taken out of the charge during the charge conference. Further, the record is silent about the defense trial strategy and Appellant cannot overcome the presumption of reasonably professional assistance with the limited information available in the record. In addition, defense counsel's decision to exclude a self-defense instruction was not so outrageous as to exceed the behavior of competent counsel under the circumstances. In fact, plausible reasons for this decision are suggested in the record.

Finally, even if the decision complained of here proved erroneous, Appellant's own testimony contained internal inconsistencies and contradicted the testimony of the State's witnesses. Forced to determine which version of events to find more credible, the jury discounted Appellant's testimony in finding her guilty. In that regard, there is nothing in the record to suggest the jury would have given any credence to a self-defense instruction in the charge had it been included. Accordingly, Appellant cannot show there is a reasonable probability that defense counsel's alleged ineffectiveness altered the outcome of the jury's verdict.

# ARGUMENT

In a single point of error, Appellant argues his trial counsel was ineffective for failing to request a self-defense instruction in the jury charge.[7] The record shows, however, a deliberate intent on the part of the Appellant and her attorney that the defense be taken out of the charge. During the charge conference, the trial court stated, "it's my understanding that [counsel] wants to put something on the record with his client about not having a self-defense charge in the jury charge." (RR 4:5). Appellant's counsel responded affirmatively. The Court then asked, "And you've discussed that with Ms. Prior?" (RR 4:5). Counsel again confirmed, stating, "I have discussed that with her, and we have both come to the decision that that should be taken out." (RR 4:5).

The Court then directed its inquiry to Appellant, asking, "Is that your decision, Ms. Prior, to not let the jury decide if you were acting in self-defense?" (RR 4:5). "Yes, sir," she responded. (RR 4:5). The Court concluded the charging conference with a final instruction to "take out the self-defense instruction ... at the request of defendant," a direction which was endorsed by counsel's "yes, sir." (RR 4:7-8).

---

[7] The decision to exclude a self-defense paragraph in the jury charge is the only aspect of his performance labeled deficient on appeal.

In compliance with the request of Appellant and her counsel, the self-defense instruction was not included in the final version of the jury charge, and the Court reiterated to counsel and Appellant that the "self-defense charge was taken out" before it charged the jury with it. (RR 4:9). The jury deliberated for less than an hour and returned a verdict of guilty of the offense of aggravated assault as charged in the indictment.[8]  (RR 4:58-59) (CR 1:37, 1:52).  Defense counsel was given permission to withdraw on December 11, 2014, the same day that the Court entered the jury's judgment of conviction for the offense of aggravated assault with an affirmative finding of a deadly weapon.  (CR 1:57, 1:60-61).

### 1)    *Strickland* **Standard of Review**

To prevail on a claim of ineffective assistance of counsel, an appellant must meet the two-pronged test established by the U.S. Supreme Court in *Strickland* and adopted by Texas two years later in *Hernandez.* Appellant must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defense.   Unless appellant can prove both prongs, an appellate court must not find counsel's representation to be ineffective.

---

[8] In part, the indictment alleged that Appellant "did then and there intentionally or knowingly threaten Bruce Bratcher with imminent bodily injury and did use or exhibit a deadly weapon, namely, a firearm." (CR 1:5) (RR 3:12).

11

*Lopez v. State*, 343 S.W.3d 137, 142 (Tex.Crim.App.2011) (reversing the finding of deficiency when the record was silent about trial counsel's reasons for failing to object to hearsay testimony) (citing *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex.Crim.App.1986)).

### 2) Presumption of Reasonably Professional Assistance

The first prong of the *Strickland* test requires Appellant to show "by a preponderance of the evidence, that trial counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms." *Lopez*, 343 S.W.3d at 142. This prong is tempered by the "strong presumption that counsel's performance fell within a wide range of reasonably professional assistance." *Id.* (quoting *Robertson v. State*, 187 S.W.3d 475, 483 (Tex.Crim.App.2006) and *Salinas v. State*, 163 S.W.3d 734, 740 (Tex.Crim.App.2005)).

To determine whether defense counsel's performance fell below an objective standard of reasonably professional assistance, the reviewing court looks at "the facts of the particular case, viewed at the time of the conduct." *Okonkwo v. State*, 398 S.W.3d 689, 693 (Tex.Crim.App.2013) (holding that the court of appeals erred in reversing the trial court's denial of motion for new trial based on ineffective assistance

12

of counsel) (citing *Strickland*, 466 U.S. at 690). The Court reviews counsel's performance "by the totality of counsel's representation and not by isolated acts or omissions." *Solis v. State*, 792 S.W.2d 95, 98 (Tex.Crim.App.1990) (en banc) (citing *Butler v. State*, 716 S.W.2d 48, 54 (Tex.Crim.App.1986)).

To meet her burden on direct appeal, Appellant must show that the record reveals that "no reasonable trial strategy could justify trial counsel's acts or omissions." *Lopez*, 343 S.W.3d at 143. When the record on direct appeal is silent about trial counsel's strategy, then the record generally does not "adequately reflect the failings of trial counsel' for an appellate court 'to fairly evaluate the merits of such a serious allegation."[9] *Id.* at 143; *see also Jackson v. State*, 877 S.W.2d 768, 771 (Tex.Crim.App.1994) (en banc) (citing *Delrio v. State*, 840 S.W.2d 443, 447 (Tex.Crim.App.1992) (en banc) (per curium). "Under normal circumstances, the record on direct appeal will not be sufficient to show that counsel's representation was so

---

[9] Claims of ineffective assistance of counsel have been resolved on direct appeal when "counsel's ineffectiveness is apparent from the record," thus a well-developed record with a single error can overcome the presumption of reasonably professional assistance. *See Lopez*, 343 S.W.3d at 143-44; *Thompson v. State*, 9 S.W. 3d 808, 813, 814 n.6 (Tex.Crim.App.1999)). When counsel fails to pursue the defendant's *only* defense, these claims have succeeded on direct appeal. *Vasquez v State*, 830 S.W.2d 948, 951 (Tex.Crim.App.1992) (en banc) (per curium); *Villa v. State*, 370 S.W.3d 787, 796-97 (Tex.App.—Eastland 2012, *aff'd,* 417 S.W.3d 455 (Tex.Crim.App.2013)) (failure to request medical care defense deprived defendant of his only defense); *Storr v. State*, 126 S.W.3d 647, 653 (Tex.App.—Houston [14th Dist.] 2004, pet. ref'd) (counsel failed to request mitigation instruction for voluntary release of kidnapping victim).

deficient and so lacking in tactical or strategic decision making as to overcome the presumption that counsel's conduct was reasonable and professional."[10] *Bone v. State*, 77 S.W.3d 828, 833 (Tex.Crim.App.2002).

Appellant bears the burden of overcoming this presumption by affirmatively demonstrating that counsel's performance was deficient.[11] *Bone*, 77 S.W.3d at 835; *Thompson*, 9 S.W.3d at 813-14. The "court must not engage in retrospective speculation." *Lopez*, 343 S.W.3d at 142 (citing *Thompson*, 9 S.W.3d at 813. Because counsel should be given an opportunity to explain his actions, unless "the challenged conduct was so outrageous that no competent attorney would have engaged in it," trial counsel's performance when the record is silent will not be found deficient on direct appeal.[12] *Goodspeed v. State*, 187 S.W.3d 390, 392

---

[10] When the record is lacking on direct appeal, "claims of ineffective assistance of counsel rejected due to lack of adequate information may be reconsidered on an application for a writ of habeas corpus." *Lopez*, 343 S.W.3d at 143.

[11] Trial counsel "should ordinarily be accorded an opportunity to explain her actions before being condemned as unprofessional and incompetent." *Bone v. State*, 77 S.W.3d 828, 836 (Tex.Crim.App.2002).

[12] On direct appeal, a hearing for a motion for new trial can supply "additional information about trial counsel's reasons." *Lopez*, 343 S.W.3d at 144. Appellant moved for a new trial, alleging ineffective assistance of counsel. (CR 1:62-66, 1:69, 1:83). To be entitled to a hearing, Appellant "must at least allege facts that show reasonable grounds to believe that [Appellant] *could* prevail under *both* prongs of the test for ineffective assistance of counsel under *Strickland*." *Smith v. State*, 286 S.W.3d 333, 338 (Tex.Crim.App.2009); *Chapa v. State*, 407 S.W.3d 428, 431 (Tex.App.—Houston [14th Dist.] 2013, no pet.). Because Appellant's motion alleged actions related to only the first prong, it does not appear that Appellant was entitled to a hearing. *C.f. Hobbs v. State*, 298

14

(Tex.Crim.App.2005); *see also Pouncy v. State*, No. 14-12-00470-CR, 2013 WL 3580638 at *2 (Tex.App.—Houston [14th Dist.], July 11, 2013, pet. ref'd) (mem.opinion) (not designated for publication). Here, the record is silent about defense counsel's strategy. Based on a silent record, Appellant cannot affirmatively demonstrate that counsel's conduct at trial was so outrageous that no other competent attorney would have done likewise, and thus she cannot satisfy the requirements for the first prong of *Strickland*.

### 3)    Trial Strategy

Appellant claims that her trial counsel failed to perform in a reasonably professional manner because he declined to include a self-defense instruction in the jury charge. However, Appellant and her trial counsel each advised the court that they did not wish to submit an instruction on self-defense to the jury. Accordingly, the issue on appeal is whether counsel should have requested the instruction for self-defense even though Appellant expressly told the court that she did not want it. The guilty verdict in this case, standing alone, does not establish ineffective assistance of counsel. Instead, Appellant's conviction merely shows that the jury rejected her defensive theory. *See Guerrero v. State*, No. 14-13-00880-CR, 2014 WL 3955157 at *2 (Tex.App.—Houston [14th Dist.], Aug.14, 2014, pet.

---

S.W.3d 193, 199 (Tex.Crim.App.2009). Although a hearing was scheduled (CR 1:67) the record does not show that it took place.

15

ref'd) (mem. opinion) (not designated for publication) (citing *Saxton v. State*, 804 S.W.2d 910, 914 (Tex.Crim.App.1991)).

In this regard, the failure of the particular strategy employed during trial does not entitle an appellant to retry the case on appeal with an alternative trial strategy. *Tolbert v. State*, 306 S.W.3d 776, 780 n. 6, 782 n.11 (Tex.Crim.App.2010); *Posey v. State*, 966 S.W.2d 57, 61, 63 (Tex.Crim.App.1998). Rather, Appellant must prove by a preponderance of the evidence there was no plausible professional reason for trial counsel's rejection of the self-defense instruction. *Bone v. State*, 77 S.W.3d 828, 836 (Tex.Crim.App.2002); *Williams v. State*, No. 14-95-01098-CR, 1998 WL 78595 at *4 (Tex.App.—Houston [14th Dist.], Feb. 26, 1998, no pet.) (not designated for publication). Appellant in this case cannot meet this requirement for two reasons.

First, Appellant herself asked the court to leave the self-defense instruction out of the jury charge.[13] Second, plausible professional reasons for counsel to decline the court's invitation to use the self-defense

---

[13] Appellant complains on appeal that the "purpose of having counsel during trial" is to "make the legal decisions." (Ant. Br. 10). Appellant played an active role throughout her defense. During arraignment in early November, her initial plea of guilty was withdrawn by the Court after she failed to accept "responsibility for guilt." (CR 1:80) (RR 2:11). On November 20, the Court granted her motion to substitute her court-appointed counsel with retained counsel. (CR 1:7-9). On the first day of trial, Appellant rejected the same plea offer a second time after defense counsel obtained it from the State and relayed it to her. (RR 2:11-14).

16

instruction are visible in multiple aspects of defense counsel's representation during trial. These plausible professional reasons for rejecting a self-defense instruction can be seen in the two-part theory of defense presented by counsel during the guilt-innocence phase of trial.

### 4) Theory of Defense: Attack on Credibility

In Appellant's opening argument, defense counsel told the jury that no witnesses other than Bruce Bratcher would say that Appellant pointed a gun at him because "it just flat out did not happen." (RR 3:20). Throughout trial he highlighted the lack of corroborating witnesses and video, the behavior of the complaining witness, and the nature of the gun. He revisited the same topics during his closing argument. (RR 4:30-40). Defense counsel also noted these facets of his defensive theory at a bench conference during the testimony of the detective as he explained, "What I was merely doing was trying to lay the groundwork, trying to set this thing for the jury this is a busy area." (RR 3:48). Defense counsel also clarified that he was emphasizing no one else at the store called 9-1-1 or "came forward as a witness and said, 'I saw a gun.'" (RR 3:51).

Defense counsel also elicited from the detective that the "interaction" between Appellant and Bruce took place at 3:20 p.m. at a "very busy" gas station parking lot (RR 3:33, 3:34). Counsel had the detective

17

explain that the store video showed other patrons calmly entering and exiting the convenience store while Bruce stood at the door addressing the Appellant. (RR 3:38-39). Counsel obtained similar testimony about the presence of others in the parking lot from Vickie Bratcher (RR 3:99) as well as Bruce. (RR 3:154-55). Defense counsel had the detective explain that the security video showed a store employee walk to the store window and return calmly to the register "like nothing happened." (RR 3:39). Counsel drew from this testimony for his closing argument:

> Let's talk about the evidence in this case. The evidence that does exist but was never shown to you. . . . There is video surveillance[14] taken from the store on that day. Did they ever show it to you? No. That's because you would have seen numerous people going in and out of this very same front door that this whole incident happened in front of.

(RR 4:34).

---

[14] Defense counsel addressed the video in his motion in limine:

> Any statement ... that the video in this case corroborates Mr. Bratcher's story is speculation. There is no video of the interaction between Mr. Bratcher and Josha Prior and any statement that the video corroborates Mr. Bratcher's story would be speculative, prejudicial and irrelevant.

(CR 1:17). Other facts included in the motion were references to Appellant's deferred adjudication status in Harris County for another offense that occurred after this offense, shell casings located in her vehicle, her invocation of the right to remain silent during her second interview with Pearland Police Department, and any reference to Appellant's brother taking items from the store without paying for them. (CR 1:17-19). The court granted the motion. (CR 1:20) (RR 2:8).

Defense counsel also argued Bruce Bratcher's behavior as aggressive and inconsistent with that of a person who had been in fear of his life. On cross-examination, Bruce conceded that he was angry. (RR 3:169). Counsel focused on Bruce's anger during closing argument:

> Mr. Bratcher had an opportunity to avoid a confrontation that day. Okay. He could have just walked through the parking lot and into the store, but he didn't. He got all the way to the front door, turned around to show that he wasn't afraid of anybody. ... He didn't just say "what" to Ms. Prior from a distance. Okay. He aggressively moved towards her ... A large man against a 5'7 female.

(RR 4:31).

Counsel had the detective describe how the video showed Bruce calmly go into the store and stand in line immediately after the conclusion of his "interaction" with Appellant (RR 3:41-43). Also, in response to cross-examination, Bruce acknowledged that he completed the trivial task of purchasing candy after his dramatic interaction with Appellant. (RR 3:167-68, 3:179-80). Bruce acknowledged for defense counsel that he said nothing to the clerks and did not seek out other patrons at the store as potential witnesses to Appellant's threat on his life. (RR 3:180).

Defense counsel also drew testimony from Vickie Bratcher that she failed to see the gun—even though she is a trained peace officer and was in a good location to see it. (RR 3:102-105). Counsel responded to the

19

introduction of State's Exhibits No. 7 and 8 (photographs of a semi-automatic pistol) for demonstrative purposes by interjecting, "I don't mean to interrupt but I just want to make clear this was not the weapon that was allegedly used that day." (RR 3:132). Instead, Appellant and Appellant's counsel presented the theory that the gun was a BB gun—a toy that "many of us . . . give to our children as a present." (RR 4:31).

### 5) Theory of Defense: Not a Deadly Weapon

Accepting the court's invitation to include the self-defense instruction would have required Appellant to admit to elements of the offense that were in dispute. The indictment alleged that Appellant "did use or exhibit a deadly weapon, namely, a firearm" to "intentionally or knowingly threaten Bruce Bratcher with imminent bodily injury." (CR 1:5; RR 3:12). Referring to the elements of the offense during voir dire, trial counsel spoke of "proving whether or not the weapon used was a firearm." (RR 2:144). Appellant testified she used a BB gun (RR 3:192, 3:195, 3:197-98, 3:210-15, 3:226, 3:229, 3:232, 3:237, 3:240-41, 3:251). She also explained, "A BB gun is a toy." (RR 3:232). Appellant did not, however, admit that she used or exhibited a firearm.

On the other hand, the State's evidence showed that the gun was a *bona fide* firearm. Bruce testified that Appellant used a semi-

20

automatic pistol. (RR 3:129). He described its cocking mechanism, said that he saw the front of its barrel, and explained Appellant's gun was similar to the pistol that his wife owned. (RR 3:125, 3:130). He reiterated, "It looked just like my wife's firearm." (RR 3:129). Bruce also said getting the pistol away from Appellant was one of his motivations when he asked his wife to prevent Appellant and her brother from leaving the scene. (RR 3:162-63).

The State did not attempt to show that Appellant's BB gun was used in manner that rendered it a deadly weapon. To prove that a BB gun is a deadly weapon,[15] the State need only have shown "that the weapon used was capable of causing serious bodily injury or death in its use or intended use." *Adame v. State*, 69 S.W.3d 581, 582 (Tex.Crim.App.2002). Here, the record is sufficient to show that the jury could have also convicted Appellant if the State had argued the purported BB gun was a deadly weapon.

"In considering whether an object is a deadly weapon, the jury may consider all of the facts of the case, including the words spoken by the accused. *Jones v. State*, No. 14-10-00767-CR, 2011 WL 3332156 at *4 (Tex.App.—Houston [14th Dist.], Aug. 4, 2011, pet. ref'd) (mem.opinion) (not designated for publication) (citing *Blaine v. State*, 647 S.W.2d 293, 294

---

[15] The guilt-innocence jury charge defined a deadly weapon as a "firearm or anything manifestly designed, made or adapted for the purpose of inflicting death or serious bodily injury." (RR 4:10); *see also* TEX. PENAL CODE ANN. § 1.07(a)(17) (Vernon 2011).

(Tex.Crim.App.1983)). During cross-examination, Appellant strayed from her previous testimony about putting the gun directly into her pants. "I pointed a gun at him, and that's when I started to walk towards the store to get my brother out." (RR 3:224).

A jury can rationally infer that a BB gun pointed at another person's face "was capable of causing serious bodily injury or death in its use or intended use." *Adame*, 69 S.W.3d at 582 (BB gun pointed at a convenience store clerk during a robbery upheld as a deadly weapon). Bruce and Appellant were either an arm's-length or a car-length apart, depending on whose story the jury believed. Appellant also testified a BB gun is capable of shooting out an eye.[16] (RR 3:212, 214).

Based on the evidence presented during trial, if the jury believed that Appellant had only a BB gun and she never pointed it at Bruce, then the jury could have acquitted her. Counsel for Appellant campaigned for this interpretation of the evidence during his closing argument:

> This was a BB gun, just as Ms. Prior testified, a
> BB gun. Not a 9-millimeter or anything, not a gun
> that's going to hurt somebody, a BB gun.

---

[16] But see *Mosley v. State*, 545 S.W.2d 144, 145 (Tex.Crim.App.1976) (A BB gun that was unloaded, *never pointed at the victim's face*, and never used to "bludgeon" or threaten to bludgeon the victim, however, may not be a deadly weapon because it could cause neither death nor serious bodily injury.)

I want to read the definition of a deadly weapon to you. It's in the charge that you're all going to get.

A deadly weapon is defined as a firearm or anything manifestly designed, made or adapted for the purpose of inflicting death or serious bodily injury.

Do you think people are going to buy a BB gun for their children if they are going to go out and kill somebody with it or hurt somebody with it? No, it's a BB gun. It's not a deadly weapon.

(RR 3:37).

Thus, counsel had at least two plausible professional reasons for declining to use the self-defense jury instruction. First, Appellant risked allowing the purported BB gun to be presented to the jury as a deadly weapon instead of a toy. Second, Appellant was not required to confess that she used or employed a deadly weapon during her argument with Bruce as long as she did not claim the affirmative defense of self-defense.

To avail herself of the avoidance benefit of the defensive theory of self-defense, Appellant would have to confess to the elements of the offense of aggravated assault with a deadly weapon. In light of this requirement, trial counsel had a plausible professional reason to pursue an alternative theory of defense. *See Okonkwo*, 398 S.W.3d at 702. Using the self-defense instruction would have reduced the State's burden, an unreasonable theory of defense given the inconsistencies within Appellant's

23

testimony. A theory of defense that does not reduce the State's burden of proving each element of the offense is not unreasonable. *Id*. at 696.

### 6) Risks of Self-Defense Instruction

The law on self-defense is governed by the doctrine of confession and avoidance. *Juarez v. State*, 308 S.W.3d 398, 401-402 (Crim.App.Tex.2010); *Fregia v. State*, No. 01-13-00312-CR, 2014 WL 527535 at *5 (Tex.App.—Houston [14th Dist.], Feb. 6, 2014, pet. ref'd) (mem.opinion) (not designated for publication). To use a defensive theory that falls within the doctrine of confession and avoidance, a defendant must admit to all elements of the offense and produce evidence to support the defensive theory. *Fregia*, 2014 WL 527535 at *5 (citing *Juarez*, 308 S.W.3d at 399 and *Ex parte Nailor*, 149 S.W.3d 125, 132-34 (Tex.Crim.App.2004)).

Appellant's admission that she pointed the gun at Bruce combined with her testimony that her BB gun could have destroyed his eye—a concession that her BB gun was adaptable to inflicting serious bodily injury and hence a deadly weapon—taken in conjunction with her other testimony during trial constitute an admission of the elements of the offense.[17] "An instruction on a confession-and-avoidance defense ... is

---

[17] Even when "the evidence supporting the defensive theory is contradicted," the defendant is still "entitled" to an instruction on the affirmative defense. *Thomas v. State*, 678 S.W.2d 82, 85 (Tex.Crim.App.1984) (en banc). "[T]he trial court must instruct the

24

appropriate only when 'the defendant's defensive evidence essentially admits to every element of the offense, including the culpable mental state, but interposes the justification to excuse the otherwise criminal conduct.'" *Cornet v. State*, 417 S.W.3d 446, 451 (Tex.Crim.App.2013).

Based on the portion of her testimony where she testified that she intended to use force, she actually used force, and she used it because she "reasonably believed it was necessary to prevent" Bruce's use of unlawful force, Appellant was entitled to a self-defense instruction as a matter of law. *Ex parte Nailor*, 149 S.W.3d at 132. Appellant's version of Bruce Bratcher's aggression could support a defensive theory of self-defense, regardless of contradictory evidence on the record. "[A] defense can be raised even when its supporting evidence has been impeached or contradicted."[18] *Dugar v. State*, 464 S.W.3d 811, 818 (Tex.App.—Houston [14th Dist.] 2015, pet. ref'd) (reversing trial court for refusing a self-defense instruction when appellant's sole defensive theory was self-defense).

---

jury on inconsistent defensive theories when those theories appear to directly contradict one another." *Booth v. State*, 679 S.W.2d 498, 499 (Tex.Crim.App.1984) (en banc). If raised during trial and requested by counsel, the trial court must instruct the jury on the defensive theory requested. *Id*. "[I]t makes no difference whether such evidence ... might be strong, weak, unimpeached, or contradicted." *Id*. at 500.

[18] The availability of the defense does not mean the facts that support it are necessarily credible. "Because appellant gave more than one story of the events, his claim of self-defense may not strike all as especially strong or convincing." *Dugar* , 2015 WL 1632690 at *5.

25

However, accepting the court's offer to include the self-defense instruction in the jury charge would have been a risky approach for the Appellant and her counsel. First, counsel would have had to act contrary to Appellant's expressed wishes. Next, invoking the justification of self-defense would have required Appellant to highlight her admission during cross-examination to the elements of the offense while discounting her other efforts to negate the deadly weapon element.

It would have highlighted the testimony about Appellant retrieving the gun and walking toward Bruce with it, rendering her a less sympathetic party for the jury than the person described as a 5' 7" young lady terrified by an angry, jealous, six-foot-tall, fifty-six-year-old. Defense counsel incorporated an implied plea for sympathy during closing arguments when he criticized Bruce's inability to determine Appellant's gender.[19] (RR 4:38). Appellant did the same when she announced during her testimony, "I didn't start this incident," and she continued, "There are bullies in this world, and that man is a bully." (RR 3:251).

---

[19] In closing argument, counsel for Appellant condemned the State's and Bruce's description of Appellant's appearance. "She has every right to dress however she wants to, live her life however she wants to; and I'm offended that anyone would say that she can't do otherwise." (RR 4:31). He resumed, "Could it be because he automatically assumed this person was a thug just because the way she was dressed?" (RR 4:37). He revisited the accusation again. "Discrimination is the same whether it's based on race or whether it's based on not liking someone just because of the way they dress or just because of what lifestyle they have." (RR 4:38).

Also, a self-defense instruction would have enabled the State to request jury instructions about violation of Texas law on firearms and verbal provocation, both of which give the jury the opportunity to neutralize the justification for the use of force sought by a self-defense instruction. The evidence at trial showed the Appellant retrieved the gun from her SUV while standing in the parking lot and confronting Bruce. The use of force against another is not justified "if the actor sought an explanation from or discussion with the other person concerning the actor's differences with the other person while the actor" was carrying a weapon in violation of Section 46.02 of the Texas Penal Code. TEX. PENAL CODE ANN. § 9.31(b)(5)(A) (Vernon 2011).

Section 46.02 [20] prohibits one from carrying a handgun "on or about his or her person" when one is not on one's own premises or when one is not "inside of or directly en route to a motor vehicle" under one's control. TEX. PENAL CODE § 46.02 (Vernon 2011). Appellant's actions met none of the exceptions. The use of force in self-defense is not justified for a person who is carrying a weapon in violation of Section 46.02 when that person "seeks an explanation from, or discussion with, another person concerning the actor's differences with that other person." *Weatherall v. State*, No. 06-

---

[20] Acts 2011, 82 Leg., ch. 679 (H.B. 25), § eff. Sept. 1, 2011.

09-00095-CR, 2009 WL 3349039 at * 2 (Tex.App.—Texarkana, Oct. 20, 2009, no pet.) (mem.opinion) (not designated for publication). Thus, using the self-defense instruction would have obligated the Appellant to achieve the impossible by explaining how she could have been justified in using force when she returned from her SUV with the gun to confront Bruce.

Use of an instruction on the justification of self-defense also would have placed Appellant in another difficult strategic position because "the use of force against another is not justified ... in response to verbal provocation alone." TEX. PENAL CODE § 9.31(b)(1). If Appellant's testimony was true, then Bruce Bratcher would have walked toward her. Bratcher testified that he did not, and if the jury found him more credible, then the only force from him that Appellant would have to defend herself against was an implied threat based on his larger physical size. At the time Appellant retrieved the gun from her vehicle, their "interaction" was strictly verbal. Although she testified that his appearance frightened her and that he walked toward her, she did not describe any specific acts of force she anticipated from him.

The State seized upon the difficulties of this justification during closing arguments:

> There is no self-defense here. Just get that out of your mind. It's not in here. It's not justification to pull out a gun based on words alone.
>
> Also, you can't provoke a situation and then start the whole dadgum thing and then turn around and say, I'm the victim. ... You don't get to start trouble and then scream, I'm the victim, when things don't go the way you want them to. It doesn't work that way.

(RR 4:18-19).

The qualification on the use of force in self-defense would have highlighted Appellant's role in a "verbal provocation" that she ended by use of a gun. If the jury believed that Appellant initiated the verbal argument, then she could not invoke the statutory presumption of reasonableness for her use of force against Bruce because she provoked him.[21] *See* TEX. PENAL CODE § 9.31(a)(2). The State would also be in a position to seek a contrary jury instruction on the limitation of self-defense by provoking the difficulty. *See* 8 Tex. Prac. Criminal Forms and Trial Manual § 106.16 (11th ed.).

Appellant is unable to show that trial counsel relied on self-defense as a theory of defense.

> Because appellant has not shown that his trial counsel relied on the statutory law of self-defense, he has failed to establish, by a preponderance of

---

[21] Appellant was reluctant to characterize her use of the gun as an intentional threat, and she transferred the interpretation to the complaining witness. "Mr. Bratcher took the BB gun as a threat." (RR 3:237). She had previously denied threatening his life. (RR 3:195).

29

the evidence, that his trial counsel was deficient either in failing to request an instruction on the law of self-defense or, conversely, in relying upon the defensive position that appellant's testimony raised.

*Ex parte Nailor*, 149 S.W.3d at 134. Like the appellant in *Nailor*, Appellant also denied an element of the offense. An indicator of Appellant's outlook on the facts and the offense charged comes from her response to a question on cross-examination when she said that she did not contact police about Bruce Bratcher because she "thought it would be over because nobody touched nobody." (RR 3:167).

Counsel's pursuit of a two-part defensive theory at trial was a strategy that reflects his reasonable and professional performance in the defense of Appellant. His trial strategy was not "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex.Crim.App.2005). For Appellant, self-defense was not the only defense available to her. From voir dire to closing argument on guilt-innocence, counsel's strategy focused on the credibility of Bruce Bratcher and the nature of the gun used by Appellant.[22]

---

[22] "'[A]n act or omission that is unprofessional in one case may be sound or even brilliant in another.'" *Okonkwo v. State*, 398 S.W.3d 689, 693 (Tex.Crim.App.2013) (quoting *Ex parte Chandler*, 182 S.W.3d 350, 354 (Tex.Crim.App.2005) (alteration in original)).

Based on the foregoing, a reasonable trial strategy may be inferred given the facts in the record. Appellant's trial counsel did not fall below an objective standard of reasonableness because he failed to include *every potential* defensive theory in his trial strategy. On the contrary, a curated trial strategy is a hallmark of professional assistance. "[T]he lawyer and the client could decide not to request the defensive issue and risk losing their credibility with the jury because the evidence raising the defense is so unworthy of belief." *Posey*, 966 S.W.2d at 61, 63. Appellant is unable to satisfy the first prong of *Strickland*.[23]

### 7) No Prejudice

Even if Appellant could overcome her burden and show counsel's performance was objectively unreasonable, she cannot show prejudice occurred when defense counsel abided by her wishes and rejected the court's invitation to include an instruction on self-defense in the jury charge on guilt-innocence. Absent a showing of prejudice, Appellant is unable to satisfy the second prong of *Strickland*.

Prejudice exists when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would

---

[23] "An attorney must apprise a case and do the best he can with the facts, and the fact that other counsel might have tried the case differently does not show inadequate representation." *Benoit v. State*, 561 S.W.2d 810, 818 (Tex.Crim.App.1977), overruled on other grounds by *Harrison v. State,* 187 S.W.3d 429, 433 (Tex.Crim.App.2005).

have been different. *Solis*, 792 S.W.2d at 98-99; *see also Bone*, 77 S.W.3d at 833; *Ex parte Lane*, 303 S.W.3d 702, 707 (Tex.Crim.App.2009); *Lopez*, 343 S.W.3d at 142 (citing *Strickland*, 466 U.S. at 687). Assuming *arguendo* that counsel's performance was unprofessional, a "'reasonable probability' is one sufficient to undermine confidence in the outcome." *Bone*, 77 S.W.3d at 833 (quoting *Strickland*, supra, and *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex.Crim.App.2002)). The jury's verdict of guilty implies that the jury found the testimony of Bruce and Vickie Bratcher more credible than Appellant's version of events.

Inclusion of a self-defense instruction would have compounded the *contrast between Appellant's story and the testimony of the other witnesses*, and it would serve as a vehicle for the State to reinforce the *inconsistencies within Appellant's own testimony*. The outcome of the case relied on the jury's assessment of credibility—no gun was produced, Appellant's brother did not testify, no video was submitted, and only three witnesses testified for the State. The addition of a self-defense instruction would not undermine the outcome of the case. Actually, the use of a self-defense instruction would reinforce the inconsistencies within Appellant's testimony and its contradictions with the testimony of the other witnesses.

Prejudice is presumed when counsel completely fails to subject the State's case to "meaningful adversarial testing" to such an extent that appellant is constructively denied assistance of counsel. *Cannon v. State*, 252 S.W.3d 342, 349 (Tex.Crim.App.2008). The record does not indicate that Appellant was *de facto* unrepresented before or during trial. In fact, defense counsel submitted a successful motion in limine (CR 1:17-20); (RR 2:8), and he filed a Motion for Probation (CR 1:15). His voir dire incorporated themes from the theory of the defense that he presented during witness testimony (RR 2:131-34) and he vigorously cross-examined the State's witnesses.

Counsel's efforts in defending Appellant were indicative of a familiarity with critical issues of fact and law as well as preparation for trial. *See Solis*, 792 S.W.2d at 100 ("Viewing counsel's representation as a whole, and assessing the cumulative effect of all of the trial counsel's errors, we do not find that but for these errors the result of the trial would have been any different."). Closing argument of counsel may also be considered in determining whether appellant has been prejudiced. *See Okonkwo v. State*, 398 S.W.3d 689, 696 n.7 (Tex.Crim.App.2013). During closing, defense counsel reinforced the themes of Appellant's defensive theories, and he attempted to mitigate evidence that was harmful to those theories. Counsel

cannot be presumed to have failed Appellant based on this conduct. *Musquiz v. State*, No. 14-13-01008-CR, 2015 WL 457737 at *4 (Tex.App.—Houston [14th Dist.], Feb. 3, 2015, no pet.) (mem.opinion) (not designated for publication).

## CONCLUSION

Appellant is unable to prove her attorney's performance was ineffective. Defense counsel complied with Appellant's decision to exclude a self-defense instruction from the jury charge. While the record is silent about the strategy behind this decision, it contains evidence of plausible reasons for leaving a self-defense theory out of the charge. Further, even if counsel were to have requested a jury instruction on self-defense, Appellant cannot demonstrate the outcome of trial would have been any different. Here, the guilty verdict resulted from the jury's assessment of credibility of the witnesses. The inclusion of the self-defense charge would have only focused the jury's attention on the inconsistencies within Appellant's testimony, which, in light of the verdict, the jury did not believe. Therefore, Appellant's single issue claiming ineffectiveness of counsel should be overruled.

## PRAYER

For these reasons, the State asks the Court of Appeals to overrule the Appellant's issue on appeal and affirm the trial court's judgment.

Respectfully submitted,

/s/ Jeri Yenne

_____

Jeri Yenne
State Bar No. 04240950
Brazoria County Criminal District Attorney

/s/ Cynthia D. Ericson

_____

Cynthia D. Ericson
State Bar No. 24053188
Assistant Criminal District Attorney

111 East Locust St., Suite 408A
Angleton, Texas 77515
(979) 864-1233
(979) 864-1712 Fax
cynthiae@brazoria-county.com

ATTORNEY FOR THE APPELLEE,
THE STATE OF TEXAS

# CERTIFICATE OF SERVICE

As required by Texas Rule of Appellate Procedure 6.3 and 9.5(b), (d), (e), I certify that I have served this document on all other parties, which are listed below, on **October 1, 2015**:

Perry R. Stevens
State Bar No. 00797496
603 East Mulberry Street
Angleton, Texas 77515
(979) 848-1111
(979) 849-9398 Fax
pstevenslawoffice@sbcglobal.net

**Attorney for the Appellant**

By:

☐ personal delivery

☐ mail

☐ commercial delivery service

☑ electronic delivery / fax

/s/ Cynthia D. Ericson
_____
Cynthia D. Ericson
Assistant Criminal District Attorney

# CERTIFICATE OF RULE 9.4 COMPLIANCE

I certify that this electronically filed document complies with Rule 9.4 of the Texas Rules of Appellate Procedure and that the number of words is: **7,533.**

/s/ Cynthia D. Ericson
_____
Cynthia D. Ericson
Assistant Criminal District Attorney

# APPENDIX

No documents are attached.